**F I L E D**

PUBLISH

**December 23, 2005**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

    No. 04-2301

MICHAEL MARSHALL,

    Defendant - Appellant.

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR-03-2366-MCA)**

---

David N. Williams, Assistant United States Attorney (David C. Iglesias, United States Attorney with him on the briefs), Albuquerque, New Mexico, for Plaintiff-Appellee.

Joe M. Romero, Jr., Romero & Associates, (Jody Neal-Post with him on the briefs) for Defendant-Appellant.

---

Before **KELLY, O'BRIEN** and **TYMKOVICH**, Circuit Judges.

---

**O'BRIEN**, Circuit Judge.

---

    Michael Marshall appeals from a sentence imposed after he pled guilty to

possession with intent to deliver more than 50 grams of a substance containing methamphetamine. Under the United States Sentencing Guidelines (USSG), the "actual" amount of methamphetamine "refer[s] to the weight of [methamphetamine], itself, contained in the mixture or substance." USSG §2D1.1(c), n.(B) (2003).[1] At sentencing, over Marshall's objection, the district court concluded the appropriate drug quantity to be considered included 17.4 grams (actual) Marshall admitted to selling on two occasions, as well as 19.6 grams (actual) found in Marshall's home. Marshall complains the inclusion of methamphetamine found in his home violates the Sixth Amendment as interpreted in *United States v. Booker*, 534 U.S. 220, 125 S. Ct. 738 (2005). Exercising jurisdiction under 18 U.S.C. § 3742, we AFFIRM.

## Background

The facts are not contested. On October 4, 2003, Marshall sold 28.6 net grams[2] (6.8 grams (actual)) of a substance containing methamphetamine to an individual who was arrested later that day. Upon his arrest, the individual (informant) revealed Marshall as the source of his drugs and agreed to participate

---

[1] Marshall's sentence was calculated according to the 2003 Sentencing Guidelines. Thus, all references to the Guidelines are to the 2003 Guidelines unless otherwise noted.

[2] "Net grams" refers to the weight of a mixture or substance reduced by the "materials that must be separated from the controlled substance before the controlled substance can be used," for example, packaging. USSG §2D1.1 cmt. n.1.

in a controlled buy. On October 5, 2003, the informant executed the controlled buy, receiving 26.4 net grams (10.6 grams (actual)) of methamphetamine from Marshall. A search warrant was issued for Marshall's residence and Marshall was arrested. While police searched Marshall's home, Marshall was questioned regarding the whereabouts of the money he obtained from the controlled buy. Eventually, Marshall disclosed where the money could be found along with another quantity of methamphetamine. Proceeding to the location identified by Marshall, the officers found the money and two cellophane bags containing 27.4 and 26.9 net grams of methamphetamine (a total of 19.6 grams (actual)).

On November 21, 2003, Marshall was indicted on two counts in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). On April 12, 2004, Marshall pled guilty to Count II, possession with intent to distribute 50 grams and more of a mixture and substance containing methamphetamine. The other count was dismissed. The pre-sentence report (PSR) recommended that the amount of methamphetamine attributable to Marshall's offense include both the drugs he admitted selling on October 4 and 5, 2003 (a total of 17.4 grams (actual)), and the 19.6 grams (actual) found with the buy money.

While the PSR was being prepared, the Supreme Court issued its decision in *Blakely v. Washington* holding that in a state prosecution the Sixth Amendment requires the maximum permissible sentence in a particular case be determined

solely by reference to "facts reflected in the jury verdict or admitted by the defendant." 542 U.S. 296, 124 S. Ct. 2531, 2537 (2004). As a result of *Blakely*, Marshall objected to using the 19.6 grams methamphetamine (actual) found in his residence to calculate his base offense level, arguing that those drugs were for his personal use and he never admitted an intent to distribute them.

Overruling Marshall's objections, the district court declined to apply *Blakely* to the sentencing guidelines and adopted the PSR's findings as to the appropriate quantity of drugs. Because it found the relevant quantity of methamphetamine was 37 grams (actual)[3], the court applied a base offense level of 30. *See* USSG §2D1.1(c)(5). The district court also concluded Marshall was entitled to a two-level reduction under the safety valve provision of USSG

---

[3] Definitions and quantities have the potential to confuse. The statute of conviction refers to a substance containing methamphetamine (net grams), but the sentence depends upon the actual weight of the methamphetamine alone. The table below summarizes the net and actual weight of methamphetamine involved in each relevant event.

| Date | Event | Net Grams | Actual Methamphetamine |
|---|---|---|---|
| October 4, 2003 | Sale | 28.6 | 6.8 |
| October 5, 2003 | Sale | 26.4 | 10.6 |
| October 5, 2003 | Search | 54.3 (27.4 + 26.9) | 19.6 |
| Total | | 109.3 | 37.0 |

§5C1.2[4] and a three-level reduction for acceptance of responsibility pursuant to USSG §3E1.1(a) and (b). Accordingly, the court adjusted the offense level to 25. With an offense level of 25 and a criminal history category of I, the applicable guideline range was fifty-seven to seventy-one months imprisonment. The district court sentenced him to fifty-seven months imprisonment.

While this appeal was pending, the Supreme Court issued its decision in *Booker*, applying its *Blakely* holding to the guidelines and reaffirming that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker,* 125 S. Ct. at 756. On appeal, Marshall maintains that under *Blakely* and *Booker,* the district court could consider only the amount of drugs he admitted to selling when calculating his sentence. If Marshall is correct and assuming the other sentencing factors remain the same, his base offense level would be 21. *See United States v. Clark*, 415 F.3d 1234, 1238 (10th Cir. 2005) (acceptance of responsibility adjustment must be included in calculation of sentencing range under Sixth Amendment). With a criminal history category of 1,

---

[4] This provision directs the district court to sentence beneath the statutory five year minimum term of imprisonment for Marshall's offense if certain predicates are met. In addition, if the district court concludes the safety valve provision applies, the guidelines instruct the court to deduct two points from the base offense level. USSG §2D1.1(b)(6).

Marshall's sentencing range would be thirty-seven to forty-six months imprisonment. USSG §5 pt. A.

### Discussion

Marshall argues the district court violated his Sixth Amendment rights by imposing a sentence based on facts it found by a preponderance of the evidence pursuant to the then-mandatory sentencing guidelines. Specifically, he asserts that, in light of *Blakely* and *Booker*, the district court committed constitutional error in using uncharged drug-related conduct to calculate his base offense level. Because Marshall preserved the error below under *Blakely*, it is sufficient to preserve sentencing error under *Booker*. *United States v. Clifton,* 406 F.3d 1173, 1175 n.1 (10th Cir. 2005) (this court "must apply the holdings in *Blakely* and *Booker* to all cases in which a defendant properly raised an issue under either case."). Where a defendant preserves a potential *Booker* error, we apply a harmless error analysis. *United States v. Serrano-Dominguez*, 406 F.3d 1221, 1222 (10th Cir. 2005).

There are two types of error under *Booker*: constitutional error and non-constitutional error. *United States v. Gonzalez–Huerta,* 403 F.3d 727, 731-32 (10th Cir.) (en banc), *cert. denied*, 126 S.Ct. 495 (2005). Constitutional *Booker* error occurs when a judge-found fact (other than a prior conviction) increases a defendant's sentence beyond the maximum authorized by a jury's verdict or a plea

of guilty through the application of mandatory guidelines. *Booker,* 125 S. Ct. at 756. This case does not present constitutional *Booker* error because Marshall's sentence was not enhanced based on judicial fact-finding.

Marshall's claim that he never admitted to an intent to distribute the methamphetamine found in his home is belied by his guilty plea. Marshall pled guilty to Count II, possession with intent to distribute 50 grams and more of a mixture and substance containing methamphetamine. A plea of guilty is an admission of all the essential elements of the charge. *McCarthy v. United States*, 394 U.S. 459, 466 (1969); *United States v. Powell*, 159 F.3d 500, 503 (10th Cir. 1998).

Because the government's offer of proof at the district court's acceptance of Marshall's guilty plea is pivotal to the resolution of Marshall's claim, we repeat it in detail:

> Your Honor, if this matter were to proceed to trial, the government would prove, beyond a reasonable doubt, through competent evidence that during the early morning hours of October 5, 2003, Region II Narcotics Task Force agents met with a confidential informant. This CI agreed to conduct a purchase of methamphetamine from the defendant. The informant was suited with a recording device. The agents drove the informant to the area near the defendant's home. They observed the informant enter the defendant's home.
>
> . . .
>
> During that meeting, the informant purchased approximately . . . 26.4 net grams of methamphetamine. This substance was tested by the DEA lab, and it was positive for methamphetamine, and the weight was 26.4 net grams.

. . .

During the morning of October 5, 2003, the task force agents executed a search warrant at the defendant's home. Upon searching of [sic] the home, they located 50.5 net grams of methamphetamine in the defendant's bathroom in a black case. This methamphetamine was tested by the DEA lab, and it was, indeed, positive for methamphetamine and the net weight is 50.5 grams.
Along with the methamphetamine, agents located $1,240 in buy money. This was the money that they had provided to the informant earlier in the day to purchase the ounce that agents believed was purchased from the defendant. During a post-arrest interview, the defendant admitted that the methamphetamine did belong to him.

. . .

Just one last added matter. The substance that was possessed by defendant is a quantity sufficient for distribution, and therefore, agents will testify that the 50.5 net grams is a quantity that is more consistent with distribution as opposed to personal use.

(Appellant's Appx. at 35-37.) Marshall then entered his plea of guilty without objection or clarification.[5]

There is no mention of the October 4, 2003 sale at either the plea hearing or in the plea agreement. Thus, the government's offer of proof and Marshall's

---

[5] Marshall's only reference to drug quantities was made earlier in the hearing as follows:
[A]lthough Mr. Marshall is, in fact, pleading to Count 2 of this two count indictment, he is going to likely challenge the quantity calculation on Count 2 based on potential issues of sentencing entrapment or issues of that sort at sentencing. We have discussed those with the government and made clear that as a basis for departure, that's what we might be bringing forward to the Court at the time of sentencing, and the -- it would be in the form of departure, and we have discussed that with the government.
(Appellant's Appx. at 31.) On appeal, Marshall does not dispute the district court's refusal to depart from the guideline sentence.

guilty plea referred solely to the drug amounts Marshall sold on October 5, 2003, and the drugs found in his residence the same day. Because the sale on October 5th was only 26.4 net grams of methamphetamine, an amount insufficient to meet the 50 grams and more to which he pled guilty, Marshall's plea necessarily admitted an intent to distribute all the drugs involved in the events of October 5th – those sold and those discovered in the search. In addition, Marshall later admitted he sold the drugs on October 4th. Indeed, he not only concedes that admission in his brief, but insists that amount is properly included in the calculation of his offense level.[6]

In summary, Marshall has admitted to two sales, a total of 17.4 grams (actual), and possession with intent to distribute 19.6 grams (actual) for a total of 37 grams methamphetamine (actual), the amount used by the court in arriving at the sentence imposed. As a result, there was no judicial fact-finding and no Sixth Amendment violation.

Neither is there prejudicial non-constitutional *Booker* error.[7] "In non-constitutional harmless error cases, the government bears the burden of

---

[6] Defense counsel's clever, but contrived, efforts to parley the *Blakely* and *Booker* holdings to Marshall's benefit are ultimately unavailing. Nevertheless, we applaud the effort.

[7] Non-constitutional *Booker* error is the product of the remedial opinion in *Booker,* which severed the statutory provisions requiring mandatory application of the sentencing guidelines in most cases. 125 S.Ct. at 764 (severing 18 U.S.C. §§ 3553(b)(1) and 3742(e)).

demonstrating, by a preponderance of the evidence, that the substantial rights of the defendant were not affected." *United States v. Glover*, 413 F.3d 1206, 1210 (10th Cir. 2005). Federal Rule of Criminal Procedure 52(a) states that "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." If the sentencing error does not affect the sentence that would have been imposed by the district court, it does not affect substantial rights. *United States v. Labastida-Segura,* 396 F.3d 1140, 1142-43 (10th Cir. 2005).

Marshall contends his situation is similar to the defendant's in *Labastida-Segura* because there, as here, the district court imposed the minimum sentence. *Id*. at 1142. In *Labastida-Segura*, we reasoned:

> [T]o say that the district court would have imposed the same sentence given the new legal landscape (even after consulting the Sentencing Guidelines in an advisory capacity) places us in the zone of speculation and conjecture--we simply do not know what the district court would have done after hearing from the parties.

*Id*. at 1143. To be sure, Marshall was sentenced at the bottom of the applicable guideline range. However, the government has shown that the district court would not have changed Marshall's sentence.

Marshall's circumstances are more akin to the defendant's position in *United States v. Ollson*, 413 F.3d 1119 (10th Cir. 2005). In *Ollson*, the defendant pled guilty and was sentenced under a mandatory guideline scheme. *Id*. at 1120. At sentencing, the district court granted the government's motion for a  twenty

percent reduction of sentence under USSG §5K1.1.  *Id.*  Because the district court

acknowledged its discretion to sentence Ollson more leniently, but declined to do

so, we found the error was harmless*.  Id.* at 1121.  We reasoned that, "unlike the

situation in *Labastida-Segura,* the district court had undoubted discretion to

reduce the sentence below what it imposed.  If the court thought that [Ollson]

deserved an even lesser sentence, it could have departed further.  Nothing in the

record overcomes the presumption that the court was aware of its discretion."  *Id.*

Similarly, in this case, after the district court granted Marshall's motion to

apply the safety-valve provision, Marshall moved for a departure based on

"Imperfect Entrapment (Coercion and Duress), Self-Incrimination and Voluntary

Disclosure of a Crime, Substantial Cooperation, Susceptibility in Prison, Post

Offense Rehabilitation, and Totality of the Circumstance/Diminished Mental

Capacity."  (Appellant's Appx. at 76-77.)  At sentencing, the district court heard

lengthy and detailed arguments from counsel on each of these theories for

departure.  After a short recess, the district court returned with its decision.  It

began by noting its authority to entertain Marshall's motion and request for relief

and continued by carefully addressing each of Marshall's theories in turn.  In no

event was the district court inclined to depart from the guidelines.[8]  Thus, as in

---

[8] We note that "notwithstanding *Booker's* invalidation of the mandatory nature of the sentencing guidelines, district courts must still consult the Guidelines and take them into account when sentencing.  Thus, appellate review continues to encompass review of the district court's interpretation and

*Ollson*, the district court fully considered all the mitigating circumstances surrounding Marshall's offense and issued a sentence accordingly. Consequently, we conclude the district court's non-constitutional *Booker* error was harmless.

**AFFIRMED**.

---

application of the Guidelines." *United States v. Graham*, 413 F.3d 1211, 1218 (10th Cir.), *cert. denied*, 2005 WL 2922646 (Nov. 7, 2005) (internal quotation marks and citation omitted).