**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 27, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES of AMERICA,

      Plaintiff-Appellee,

v.

MICHAEL ROBERTS, a/k/a
OUTLAW MICHAEL,

      Defendant-Appellant.

No. 04-6285
(D.C. No. CR-02-214-M)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*] [**]

Before **EBEL**, **HOLLOWAY** and **TYMKOVICH**, Circuit Judges.

Defendant-Appellant Michael James Roberts pleaded guilty to a two-count

information charging him with being a felon in possession of a firearm in

violation of 18 U.S.C. § 922(g) ("Count 1"), and use of a telephone to facilitate

the manufacture and distribution of methamphetamine in violation of 21 U.S.C.

---

[*] This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See FED. R. APP. P. 34(f) and 10th CIR. R. 34.1(G). The case is therefore ordered submitted without oral argument.

§ 843(b) (Count 2").[1]  After accepting Mr. Roberts's plea and conducting a sentencing hearing, the district court sentenced Mr. Roberts to 120 months' imprisonment for Count 1 and 48 months' imprisonment for Count 2, to run consecutively, followed by three years' supervised release.  On appeal, Mr. Roberts argues that he is entitled to resentencing in light of United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005).  Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we disagree and therefore **AFFIRM** Mr. Roberts's sentence.

---

[1]  Title 18, U.S.C. § 922(g) provides, in relevant part:
(g) It shall be unlawful for any person--
(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; . . .
to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Title 21, U.S.C. § 843(b) provides:
(b) Communication facility
It shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter or subchapter II of this chapter. Each separate use of a communication facility shall be a separate offense under this subsection. For purposes of this subsection, the term "communication facility" means any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures, or sounds of all kinds and includes mail, telephone, wire, radio, and all other means of communication.

# I. BACKGROUND

In January of 2001, the Bureau of Alcohol, Tobacco and Firearms (BATF) began investigating the Outlaw Motorcycle Club for unlawful firearms possession and illegal drug trafficking. BATF had identified Mr. Roberts as a member of the Oklahoma Chapter of the Club. On March 30, 2001, BATF executed a federal search warrant at the Outlaw Motorcycle Club clubhouse located in Oklahoma City, where the federal agents later determined Mr. Roberts lived during January, February, and March of 2001. The investigation revealed that Mr. Roberts had been in possession of two firearms—a 12-gauge shotgun and a 7.62 x 39 mm caliber rifle. The investigation further revealed that Mr. Roberts provided chemicals to members of the Outlaw Motorcycle Club for manufacturing methamphetamine and was a distributor of methamphetamine for the Club. As a result of the investigation, Mr. Roberts was charged for his role in manufacturing and distributing methamphetamine and for illegal possession of a firearm after previously being convicted of a felony.

On November 25, 2003, Mr. Roberts entered a plea agreement with the Government, in which he pleaded guilty to a two-count superseding information charging him with being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g), and using a telephone to facilitate the manufacture and distribution of methamphetamine, a violation of 21 U.S.C. § 843(b). In

connection with his guilty plea, Mr. Roberts submitted the following written statement:

> Between January 1999 and August 5, 2002, I had an SKS 7.62 x 39 mm semi-automatic rifle and an Ithaca 12 gauge shotgun. I used the telephone to distribute methamphetamine and I have a felony conviction from California.

Mr. Roberts also expressly waived his right to a jury trial and his appellate rights. In exchange for Mr. Roberts's plea, the Government agreed to dismiss all other counts charged under the second superseding indictment. The district court accepted Mr. Roberts's plea after a hearing and referred the case to a probation officer for a Presentence and Investigation Report ("PSR").

The probation officer created the PSR using the 2001 version of the Federal Sentencing Guidelines. Under those Guidelines, Mr. Roberts's conviction under 18 U.S.C. § 922(g)—felon in possession of a firearm—warranted a base offense level of 14. See U.S.S.G. § 2K2.1(a)(6)(A). Section 2K2.1(c)(1) further provides, however, that, if the defendant "used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense," the courts should apply § 2X1.1 in respect to the other offense if the resulting offense level is greater using that other offense. Id. § 2K2.1(c)(1). Section 2X1.1 then directs that the base offense level for the substantive offense be used. Id. § 2X1.1.

The applicable Guidelines section for violation of 21 U.S.C. § 843(b)—use of the telephone to facilitate the manufacture and distribution of methamphetamine—is U.S.S.G. § 2D1.6. This section directs the use of the offense level applicable to the offense underlying that conviction; here, the manufacture and distribution of methamphetamine. See id. § 2D1.6.

The PSR indicated that Mr. Roberts used a firearm in connection with the manufacture and distribution of methamphetamine; it therefore recommended applying § 2K2.1(c)(1). Additionally, the PSR estimated that 2.66 kilograms of actual methamphetamine were attributable to Mr. Roberts and that this was the underlying offense applicable to both of Mr. Roberts's convictions pursuant to sections 2X1.1 and 2D1.6 of the Guidelines. Based on this relevant conduct, the PSR assigned an enhanced base offense level of 38 for the two convictions pursuant to § 2D1.1(c)(1).[2] The probation officer then recommended a two-level enhancement for possession of a dangerous weapon pursuant to U.S.S.G.

---

[2] Guidelines § 2D1.1(c)(1) assigns a base offense level of 38 for offenses involving "1.5 KG or more of Methamphetamine (actual)." U.S.S.G. § 2D1.1(c)(1). The applicable Note explains that:
"Methamphetamine (actual)" refer[s] to the weight of the controlled substance, itself, contained in the mixture or substance. . . . In the case of a mixture or substance containing . . . methamphetamine, use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the . . . methamphetamine (actual), whichever is greater.
U.S.S.G. § 2D1.1(c) n.(B).

§ 2D1.1(b)(1), and a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) & (b).

With a criminal history category III, Mr. Roberts's Guideline range was therefore 262-327 months for each count. Because this range exceeded the applicable statutory maximum for Count 1 and for Count 2, the statutory maximums superseded the Guideline range pursuant to U.S.S.G. § 5G1.1.[3] The probation officer therefore assigned the statutory maximums as the guideline for imprisonment on each count, 120 months on Count 1 and 48 months on Count 2. See 18 U.S.C. § 924(a)(2); 21 U.S.C. § 843(d)(1).

Prior to sentencing, Mr. Roberts submitted a number of objections to the PSR, including an objection based on Blakely v. Washington, 542 U.S. 296 (2004), which the Supreme Court issued between the time Mr. Roberts pleaded guilty and his sentencing. Mr. Roberts specifically disputed the type and quantity

---

[3] Section 5G1.1 reads:
(a) Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence.
(b) Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence.
(c) In any other case, the sentence may be imposed at any point within the applicable guideline range, provided that the sentence--
    (1) is not greater than the statutorily authorized maximum sentence, and
    (2) is not less than any statutorily required minimum sentence.
U.S.S.G. § 5G1.1.

of drugs the PSR attributed to him and the involvement of a firearm in the commission or attempted commission of another offense. Additionally, he objected to any increase in his sentence based on these facts.

At the sentencing hearing on August 31, 2004, the district court declined to address the effect of Blakely because the Supreme Court had granted certiorari in Booker. Instead, the district court mandatorily sentenced Mr. Roberts according to the Federal Sentencing Guidelines. The district court found that "it was not clearly improbable that the weapon [, which Mr. Roberts admitted possessing,] was involved in the offense" of distributing methamphetamine. Additionally, the district court found by a preponderance of the evidence that at least 2.66 kilograms of actual methamphetamine were attributable to Mr. Roberts. Based on these factual findings, the district court accepted the recommendations of the PSR and imposed a 120-month sentence for the felon in possession conviction and a 48-month sentence for the use of the telephone to facilitate the manufacture and distribution of methamphetamine conviction, to run consecutively.

The district court also opted to provide two alternative sentences. In the first alternative, in the event the Guidelines were held to be unconstitutional by the then-pending Booker decision, the court announced an alternative sentence of 120 months on Count 1 and 48 months on Count 2, to run consecutively. As a second alternative, in the event that only the upward enhancements were found to

be unconstitutional, the court indicated that Mr. Roberts's Guideline range would then be 15-21 months for both Counts 1 and 2 and announced a sentence of 21 months on Count 1 and 21 months on Count 2, to be served consecutively. This appeal followed.

## II. DISCUSSION

On appeal, Mr. Roberts contends that the enhancements to his sentence under § 2D1.1(c)(1), applicable pursuant to §§ 2K2.1(c)(1) and 2D1.6, violated his constitutional rights because the district court engaged in fact-finding declared unconstitutional by <u>Booker</u>. In response, the Government argues that Mr. Roberts is not entitled to be resentenced in light of <u>Booker</u> because Mr. Roberts waived his Sixth Amendment rights. Although we agree that, by pleading guilty and signing the waiver of jury trial form, Mr. Roberts is precluded from raising a constitutional <u>Booker</u> argument, he is not precluded from raising a non-constitutional <u>Booker</u> argument. Nonetheless, we affirm the district court's sentence because we conclude that any non-constitutional <u>Booker</u> error was harmless.

### A. Waiver of Constitutional Rights

"A waiver is the intentional relinquishment or abandonment of a known right or privilege." <u>United States v. Leach</u>, 417 F.3d 1099, 1103-04 (10th Cir. 2005). We review whether a constitutional right was knowingly waived <u>de novo</u>.

United States v. Morris, 287 F.3d 985, 988 (10th Cir. 2002). Here, Mr. Roberts executed two waivers: 1) a written waiver of his Sixth Amendment right to a jury trial, which he reaffirmed in his petition to plead guilty and again during the plea hearing and 2) a waiver of appellate rights in his plea agreement.

**1.      Waiver of right to appeal and bring collateral challenge.**

In an Order dated April 5, 2005, we denied the Government's motion to enforce the waiver of appellate rights contained in Mr. Roberts's plea agreement.[4]

_____

[4] In full, that waiver reads as follows:

9.      Defendant understands that a sentencing guideline range for his case will be determined by the Court under the guidelines issued by the U.S. Sentencing Commission. Defendant also understands that the Court has jurisdiction and authority to impose any sentence within the statutory maximum for the offense(s) to which he is pleading guilty. Defendant further understands that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, give him the right to appeal the judgment and sentence imposed by the court. Acknowledging all this, defendant in exchange for the promises and concessions made by the United States in this plea agreement, knowingly and voluntarily waives his right to:
        a.    Appeal or collaterally challenge his guilty plea and any other aspect of his conviction, including but not limited to any rulings on pretrial suppression motions or any other pretrial dispositions of motions and issues.
        b.    Appeal, collaterally challenge, or move to modify under 18 U.S.C. § 3582(c)(2) or some other ground, his sentence as imposed by the Court and the manner in which the sentence is determined, provided the sentence is within or below the applicable guideline range determined by the Court to apply in this case. Defendant acknowledges that this waiver remains in full effect and enforceable, even if the Court rejects one or more of the positions of the United States or defendant

(continued...)

The final paragraph of that waiver expressly excluded challenges based on changes in Supreme Court or Tenth Circuit case law that have retroactive effect. In Booker, the Court stated that: "We must apply today's holding—both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act—to all cases on direct review." Booker, 125 S. Ct. at 769 (citing Griffin v. Kentucky, 479 U.S. 314, 328 (1987) ("[a] new rule for the conduct of criminal prosecution is to be applied retroactively to all cases . . . pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past.")). Accordingly, we concluded that Mr. Roberts appeal challenging his sentence under Booker was not within the scope of his appellate waiver.

**2. Waiver of Sixth Amendment right to a jury trial.**

Separate from the waiver of appellate rights, Mr. Roberts also executed a written waiver of his Sixth Amendment right to a jury trial.[5] We have previously

---

[4](...continued)
set forth in paragraph 7 concerning the application of the U.S. Sentencing Guidelines.

      c. It is provided that (i) defendant specifically does not waive the right to appeal an upward departure from the sentencing guideline range determined by the Court to apply in this case, and (ii) his waiver of right to appeal and to bring collateral challenges shall not apply to appeals or challenges based on changes in the law reflected in Tenth Circuit or Supreme Court cases decided after the date of this agreement that are held by the Tenth Circuit or Supreme Court to have retroactive effect.

[5] That waiver read as follows:

(continued...)

held that when, as here, a defendant "waive[s], without qualification, [his] right to a jury trial in [his] guilty plea, . . . [he] may not [on appeal] assign as error the failure of the district court to afford [him] a jury determination of facts relevant

---

[5](...continued)
I, <u>Michael Roberts,</u> the undersigned defendant, having been fully apprised of my rights, do hereby waive a jury trial and agree to try the above entitled case to the Court as provided by Rule 23(a), <u>Federal Rules of Criminal Procedure</u>.

Additionally, Mr. Roberts's petition to plead guilty contained the following waiver:
11.  Do you understand that you have a right to plead NOT GUILTY to every charge filed against you?  Yes <u> X </u> No <u>___</u>
12.  Do you understand if you plead NOT GUILTY you have the following constitutional rights:
(a) the right to a speedy and public trial by jury?  Yes <u> X </u> No<u>___</u>
. . .
(f) the right to be presumed innocent until the United States has proved you guilty beyond a reasonable doubt by the unanimous agreement of all 12 jury members?  Yes <u> X </u> No <u>___</u>

And the Transcript of Change of the Plea reflects the following exchange between the district court judge and Mr. Roberts:
THE COURT: Do you understand that you have the right to a jury trial and that you, and you alone, may waive or give up that right?
THE DEFENDANT: Yes.
THE COURT: Do you understand . . .,
to convict you, all 12 of those jury members would have to agree unanimously that you are guilty.  If you waive jury trial, the Court, then, would determine your guilt or your innocence.
Do you understand all of these many rights that you will give up if this Court accepts your guilty plea?
THE DEFENDANT: Yes, ma'am.

to sentencing." Leach, 417 F.3d at 1104. Furthermore, we have previously held that "a waiver of appellate rights [is] not rendered unknowing or involuntary by the Supreme Court's subsequent issuance of Booker or Blakely." Id. We therefore conclude that while Mr. Roberts did not generally waive his right to challenge his appeal based on Booker, he specifically waived his right to challenge his sentence based on Sixth Amendment grounds.

The Government argues that Mr. Roberts is not entitled to have his sentence remanded in light of Booker on any grounds because he waived his Sixth Amendment rights. Such an argument, however, fails to recognize that district courts may commit two distinct types of error at sentencing under the Sentencing Guidelines: one constitutional and one non-constitutional. United States v. Gonzalez-Huerta, 403 F.3d 727, 731-32 (10th Cir.) (en banc), cert. denied, 126 S. Ct. 495 (2005). A sentencing court commits constitutional Booker error "by relying upon judge-found facts, other than those of prior convictions, to enhance a defendant's sentence mandatorily." Id. at 731. Non-constitutional error, on the other hand, involves "applying the Guidelines in a mandatory fashion, as opposed to a discretionary fashion." Id.

We therefore conclude that, by pleading guilty and executing and reaffirming a waiver of jury trial form, Mr. Roberts waived his right to challenge his sentence as constitutionally erroneous under Booker on the ground that the

district court failed to afford him a jury determination of facts relevant to mandatory sentencing, as the Sixth Amendment requires; however, Mr. Roberts has not waived his right to challenge his sentence under Booker based on non-constitutional error.

## B. Non-constitutional Booker Error

"Any sentence imposed through mandatory application of the Sentencing Guidelines, even where there is no Sixth Amendment violation, is erroneous." United States v. Serrano-Dominguez, 406 F.3d 1221, 1223 (10th Cir. 2005) (citing Gonzales-Huerta, 403 F.3d at 731). Here, the district court applied the sentence then-mandated by the Sentencing Guidelines—120 months for the felon in possession conviction and 48 months for the use of the telephone to facilitate the manufacture and distribution of methamphetamine conviction. In doing so, the district court committed non-constitutional Booker error.

In this case, the Government admits and the record indicates that Mr. Roberts preserved the issue of potential Booker error for appeal by making a Blakely objection at the sentencing hearing. See United States v. Geames, 427 F.3d 1333, 1339 (10th Cir. 2005). Where a defendant preserves a potential Booker error, we apply a harmless error analysis. United States v. Marshall, 432 F.3d 1157, 1160 (10th Cir. 2005). "In non-constitutional harmless error cases, the

government bears the burden of demonstrating, by a preponderance of the evidence, that the substantial rights of the defendant were not affected." Id. at 1162 (quotations omitted).  We conclude that the Government has met its burden in this case.

"If the sentencing error does not affect the sentence that would have been imposed by the district court, it does not affect substantial rights." Id. (citing United States v. Labastida-Segura, 396 F.3d 1140, 1142-43 (10th Cir. 2005)). Non-constitutional Booker error is therefore harmless when, for example, "we are not required to engage in any speculation . . . because the district court explained exactly what it would do if the Guidelines were found unconstitutional." United States v. Corchado, 427 F.3d 815, 821 (10th Cir. 2005).  Thus, where, as here, the district court announces an alternative sentence using the Guidelines as advisory rather than mandatory and that sentence is identical to the sentence imposed under a mandatory Guideline regime, non-constitutional error does not warrant a remand. See Serrano-Dominguez, 406 F.3d at 1223-24 (holding that the district court's non-constitutional Booker error was harmless because the district court's announcement of an alternative sentence not based on the Guidelines made clear it would have imposed same sentence on remand).

Furthermore, "[a]lthough the district court did not specify that it was applying the sentencing methodology suggested in Booker . . . [,] we know that

the court consulted the Guidelines and adopted the findings in the PSR, which analyzed several of the factors set forth in 18 U.S.C. § 3553(a)" in sentencing Mr. Roberts.  See Corchado, 427 F.3d at 821; see also United States v. Rines, 419 F.3d 1104, 1107 (10th Cir. 2005), cert. denied, — S. Ct. —, 2006 WL 37744 (2006) (recognizing that the district court need not "march through § 3553(a)'s sentencing factors" before we uphold a sentence).

## III.  CONCLUSION

Based on the foregoing, we AFFIRM Mr. Roberts's sentence because the district judge's announcement of an alternative sentence, based on the methodology later announced in Booker, that was identical to the sentence imposed under the then-mandatory Guidelines renders any non-constitutional Booker error harmless.

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge

- 15 -