**F I L E D**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff - Appellee, | No. 05-4055 |
| v. | (D. Utah) |
| JOSEPH MANUEL REYES, | (D.C. No. 1:04-CR-030-TC) |
| Defendant - Appellant. | |

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **EBEL**, and **TYMKOVICH**, Circuit Judges.

Joseph Manuel Reyes appeals his conviction for bank robbery. *See* 18 U.S.C. § 2113(a). He contends that certain hearsay testimony was improperly admitted in violation of the Confrontation Clause, and as an excited utterance.

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

We have jurisdiction under 28 U.S.C. § 1291.[1] We affirm because the testimony could not have affected the verdict.

## I. BACKGROUND

On February 4, 2004, a Wells Fargo bank in Logan, Utah, was robbed. A man wearing sunglasses and a hooded blue jacket with the words "Old Navy" across the front entered the bank and handed the teller a note that said "Give me your money or I'll shoot you." R. Vol. III at 52. The teller gave the robber approximately $2,900 in denominations ranging from $1 to $20, including $40 in $2 bills. Bank security cameras took the robber's picture, which was published in the local newspaper the next day.

At trial, several witnesses identified Mr. Reyes as the man in the bank photograph. A police officer who had arrested Mr. Reyes the night before the

---

[1]We originally partially remanded to the district court for a determination whether there was excusable neglect justifying Mr. Reyes's filing his notice of appeal two days late. Order of May 19, 2005. Mr. Reyes's counsel filed an affidavit with the district court explaining that he was busy with other legal matters and had neglected to file the notice, leaving Mr. Reyes to file his notice *pro se* after the deadline had passed. We have serious doubts whether this constitutes excusable neglect. *See United States v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004 ("'inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute "excusable" neglect'" (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993)). Nevertheless, the government has not objected. And recently the Supreme Court strongly indicated that timeliness rules are not jurisdictional. *See Eberhart v. United States*, 126 S. Ct. 403, 406 (2005) (when the government objects to an untimely filing, dismissal is mandatory; but "failure to object to untimely submissions entails forfeiture of the objection"). We therefore proceed to the merits.

robbery on a separate charge testified that he was "about 90 percent sure" that the pictured man was Mr. Reyes. *Id*. at 20. He also identified the jacket Mr. Reyes was wearing the night he was arrested as the jacket seen in the photo. Three neighbors testified that they were "pretty certain," R Vol. V at 59, "positive," *id*. at 37, and "very sure," *id*. at 82, that the man in the bank photo was Mr. Reyes. Two other acquaintances of Mr. Reyes testified that they had "no doubt in my mind," R. Vol. III at 40, and were "very certain," R. Vol. V at 100, that the photo was of Mr. Reyes.

Christopher Godinez, who testified that he and Mr. Reyes were "like brothers, " *id*. at 106, provided information beyond just identifying the man in the photo. He said that Mr. Reyes showed him a copy of the bank photo and asked if it looked like him. He testified, "I told him no, but inside I knew it was him." *Id*. at 115. The day after the robbery he went with Mr. Reyes to the home of Mr. Reyes's mother. Mr. Reyes's family had "recognized him from the picture in the paper and they had a family meeting on why . . . he did it." *Id*. at 118.

> [Prosecutor]: And what did Joseph [Mr. Reyes] say during these discussions of why he robbed the bank?
>
> [Mr. Godinez]: I believe he said he didn't care. That he needed the money.

*Id*. The two had a conversation the next day in which Mr. Reyes again said he robbed the bank because he needed the money.

Other witnesses, including two bank tellers, also identified Mr. Reyes's jacket and sunglasses as the same that were worn by the robber. (A few minutes after the robbery Mr. Reyes had purchased a truck from a neighbor; he left his jacket and sunglasses with the neighbor, who later turned them over to the police.) In addition, several witnesses noted that in the days after the robbery Mr. Reyes paid for numerous items, such as the truck, with cash, including several $2 bills.

Finally, over a hearsay objection from defense counsel, Captain Eric Collins of the Logan City Police Department testified about a statement by Mr. Reyes's mother, Hortencia Garza, after Captain Collins and two other officers showed her a copy of the bank-surveillance-camera image of the robber:

Q. And what was her reaction?

A. She immediately started to cry.

Q. Did you put a question to her.

A. I did.

Q. What did you say?

A. I asked her if that was her son Joseph.

Q. And what did she do?

A. She said yes.

Q. Did she do anything with her head or—

-4-

A. She sat down on the couch and put her head in her hands and cried for some time, and I tried to comfort her. It was obvious that she was upset.

R. Vol. V at 96-97. Ms. Garza did not take the stand at trial. The district court admitted the testimony under the excited-utterance exception to the hearsay rule. *See* Fed. R. Evid. 803(2) (providing hearsay exception for a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.").

Mr. Reyes makes two arguments on appeal. First, he argues that the testimony of Captain Collins regarding Ms. Garza's identification of Mr. Reyes violated the Confrontation Clause. In addition, he argues that the testimony was hearsay, and was not an excited utterance.

## II. DISCUSSION

The government concedes that admission of Ms. Garza's statement violated the Confrontation Clause. We also will assume (and, indeed, are inclined to believe) that her statement was not an excited utterance. Nevertheless, Mr. Reyes is not entitled to relief.

### A. Standard of Review

Mr. Reyes concedes that he did not raise the Confrontation Clause issue below and that we review it only for plain error. "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4)

seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (internal quotation marks omitted). "Satisfying the third prong of plain-error review—that the error affects substantial rights—usually means that the error must have affected the outcome of the district court proceedings." *Id.* at 732 (internal quotation marks omitted).

As for the alleged erroneous admission of hearsay, we review for harmless error because Mr. Reyes preserved his objection below. *See United States v. Marshall*, 432 F.3d 1157, 1160 (10th Cir. 2005). This is not a constitutional claim. "In non-constitutional harmless error cases, the government bears the burden of demonstrating, by a preponderance of the evidence, that the substantial rights of the defendant were not affected." *Id*. at 1162 (internal quotation marks omitted).

### B.    Merits

The evidence introduced at trial was overwhelming. There can be no doubt that excluding Captain Collins's testimony about the mother's identification would not have affected the outcome of the trial. Any error was harmless, and certainly did not satisfy the third prong of the plain-error test.

## III.   CONCLUSION

We AFFIRM the judgment of the district court.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge