**F I L E D**

**UNITED STATES COURT OF APPEALS**

**April 4, 2007**

**TENTH CIRCUIT**

**Elisabeth A. Shumaker**
**Clerk of Court**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff - Appellee, | No. 04-5161 |
| v. | N.D. Oklahoma |
| DEMETRIUS LAWON ARLEDGE, | (D.C. No. 04-CR-39-01-P) |
| Defendant - Appellant. | |

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **O'BRIEN**, and **TYMKOVICH**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Demetrius Lawon Arledge was convicted by a jury of possession of a firearm and ammunition while subject to a protective order in violation of 18 U.S.C. §§ 922(g)(8) and 924(a)(2). He was sentenced to 24 months

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

imprisonment. His counsel filed a brief pursuant to *Anders v. California* and a motion for leave to withdraw as counsel.[1] 386 U.S. 738 (1967). Arledge and the government responded to the *Anders* brief. The government mentioned a potential sentencing issue based upon *United States v. Booker*, 543 U.S. 220 (2005). We directed Arledge's counsel to file a reply brief addressing *Booker*, which was done. After fully examining the proceedings and considering all of the briefs, we agree with Arledge's counsel that no non-frivolous grounds for appeal appear on this record. Therefore, we GRANT the motion to withdraw and DISMISS the appeal.

## I. Background

At one time, Arledge lived in the same residence with LaShawna Donley, the mother of his child. On September 29, 2000, Donley filed a petition for a protective order against Arledge, alleging he was endangering her. On that same day, an emergency protective order was issued, restraining Arledge from abusing, injuring or contacting Donley. It was served on Arledge the next day. The

---

[1] *Anders* holds "if counsel finds [his client's] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw." 386 U.S. at 744. Counsel must submit to both the court and his client a "brief referring to anything in the record that might arguably support the appeal." *Id.* The client may then "raise any points he chooses." *Id.* Thereafter, the court must completely examine all the proceedings to determine the frivolity of the appeal. "If it so finds it may grant counsel's request to withdraw and dismiss the appeal . . . . [I]f it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal." *Id.*

emergency protective order notified Arledge that a hearing would be held on October 12, 2000, to allow him the opportunity to show cause why the order ought not be made permanent. It warned Arledge that if he failed to appear at the hearing, the emergency protective order would become permanent without further notice. It further informed Arledge: "Please note, it may be a violation of federal law to carry a firearm pursuant to 18 USC 8922(g)(8) [sic]." (Appellee's Addendum of Exhibits at Ex. 12.)

Arledge did not attend the October 12 hearing. Therefore, the emergency protective order was made permanent, *i.e.*, extended for three years (unless subsequently modified).[2] The permanent protective order cautioned: "POSSESSION OF A FIREARM OR AMMUNITION BY A DEFENDANT WHILE THIS ORDER IS IN EFFECT MAY SUBJECT THE DEFENDANT TO PROSECUTION FOR A VIOLATION OF FEDERAL LAW EVEN IF THIS ORDER DOES NOT SPECIFICALLY PROHIBIT THE DEFENDANT FROM POSSESSING A FIREARM OR AMMUNITION." (*Id.* at Ex. 13.) On June 16, 2003, while the permanent protective order was still in effect, Arledge was arrested. Officers found a loaded handgun in his possession.

On March 4, 2004, Arledge was indicted for knowingly possessing a firearm and ammunition "while subject to a protective order restraining him from

---

[2] Although Arledge was incarcerated when he was served with the emergency protective order, he was not incarcerated at the time of the hearing.

harassing, stalking, or threatening an intimate partner, issued after a hearing of which he had actual notice and an opportunity to participate" in violation of 18 U.S.C. §§ 922(g)(8) and 924(a)(2). (R. Vol. I, Doc. 1.) Arledge proceeded to trial; the jury found him guilty. He was sentenced to 24 months imprisonment.

## II. Discussion

In his *pro se* brief, Arledge raises several arguments concerning his trial and sentencing. He also claims ineffective assistance of counsel. We address each in turn.

### A. Due Process

In her petition for a protective order, Donley alleged Arledge broke her jaw and cut her neck and hand with a knife. Based on these allegations, Arledge was charged with domestic assault and maiming in Oklahoma state court. He was acquitted of those charges. At Arledge's federal trial, the government filed a motion in limine seeking to exclude evidence concerning the state court acquittal as irrelevant. The record does not reflect the district court's ruling. Nevertheless, when Arledge mentioned his state court acquittal several times while testifying, the court sustained the government's objections.

Arledge argues the district court violated his due process rights by preventing him from presenting a defense, *i.e.*, informing the jury he was acquitted of the allegations underlying the permanent protective order. We disagree. Regardless of the ultimate outcome of the criminal charges brought

based on the allegations underlying the protective order, the order was in effect at the time Arledge possessed the firearm and ammunition. Arledge cites no authority for the proposition that an acquittal on state criminal charges brought based on the conduct underlying a protective order constitutes an affirmative defense to a § 922(g)(8) charge. Indeed, defendants prosecuted under § 922(g)(8) are generally not permitted to collaterally attack the validity of the underlying protective order. *See United States v. Young*, 458 F.3d 998, 1004-05 (9th Cir. 2006) (so long as the protective order resulted from a hearing of which the defendant had actual notice and an opportunity to participate, the defendant may not collaterally attack the order in a § 922(g)(8) prosecution); *United States v. Hicks*, 389 F.3d 514, 534 (5th Cir. 2004) ("[A] defendant may not collaterally attack a predicate order in a [§] 922(g)(8) prosecution, at least so long as the order is not so transparently invalid as to have only a frivolous pretense to validity.") (quotations omitted); *see also Lewis v. United States*, 445 U.S. 55, 60-65 (1980) (finding defendant, who was charged under 18 U.S.C. § 1202, § 922(g)'s predecessor, could not collaterally attack the prior felony conviction in his federal prosecution; nothing on the face of § 1202 (as compared to other federal statutes) suggested a congressional intent to limit its coverage to persons whose prior felony convictions are not subject to collateral attack). Therefore, Arledge's state court acquittal was not relevant to the issue at hand – whether Arledge possessed a firearm and ammunition while subject to a protective order.

The district court properly prohibited Arledge from informing the jury of his acquittal. *See* Fed. R. Evid. 401.

B. Insufficient Evidence

Arledge contends the government presented insufficient evidence to support his conviction. "We review de novo whether the prosecution presented sufficient evidence to support a conviction." *United States v. Avery*, 295 F.3d 1158, 1177 (10th Cir. 2002). In advancing such a challenge, Arledge is "faced with a high hurdle." *United States v. Voss*, 82 F.3d 1521, 1524 (10th Cir. 1996).

> In evaluating a sufficiency of the evidence challenge, [we] ask only whether taking the evidence - both direct and circumstantial, together with the reasonable inferences to be drawn therefrom - in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt.

*United States v. Zabriskie*, 415 F.3d 1139, 1144 (10th Cir. 2005) (quotations omitted).

To prove a violation of § 922(g)(8), the government must show: "1) the defendant was subject to a restraining order issued after a hearing, 2) the defendant thereafter knowingly possessed a firearm, and 3) the possession was in or affecting interstate commerce."[3] *United States v. Reddick*, 203 F.3d 767, 771

---

[3] The statute provides:

(g) It shall be unlawful for any person– . . . .

    (8) who is subject to a court order that--

        (A) was issued after a hearing of which such person received

(10th Cir. 2000). The jury was so instructed. Arledge does not challenge the second or third elements and rightly so. At trial, Arledge admitted he was carrying a loaded firearm when he was arrested and Special Agent Jeffrey Cochran of the Bureau of Alcohol, Tobacco, Firearms and Explosives testified this firearm, and the ammunition inside, were manufactured outside Oklahoma. Therefore, we turn to Arledge's main argument – the government presented insufficient evidence showing he was aware he was subject to a protective order because he was never served with the emergency protective order notifying him

---

actual notice, and at which such person had an opportunity to participate;

(B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

(C) (i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or

(ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury; []

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

-7-

of the hearing at which the emergency order became permanent.[4]  He is wrong.

At trial, Deputy Sheriff Chris Harkey testified he served Arledge with the petition for protective order and the emergency protective order while Arledge was incarcerated at the county jail.  Harkey also stated his normal practice when serving a protective order on an individual is to explain its contents to the individual, including the opportunity to appear at the indicated hearing.  The government also introduced the emergency protective order, as well as the "Sheriff's Return" showing it was served on Arledge.  While Harkey admitted on cross-examination that he did not specifically remember serving Arledge with the emergency protective order and Arledge testified he did not recall being served, Harkey testified he remembered Arledge's face.  The jury apparently believed Harkey.  *See United States v. Nieto*, 60 F.3d 1464, 1469 (10th Cir. 1995) (it is the prerogative of the jury as factfinder to resolve conflicting testimony, weigh the evidence, and draw reasonable inferences from the facts presented).  Based on Harkey's testimony, the jury could have reasonably concluded Arledge was properly served and therefore adequately made aware of the protective order

---

[4] In his *pro se* brief, Arledge correctly clarifies he "is not claiming that he did not know of the existence of [§] 922(g)(8), which is not a defense to the law." (Appellant's Response to Anders Br. at 5.)  "A fundamental principle of our justice system recognizes that ignorance of the law is no excuse." *Reddick*, 203 F.3d at 771.  Indeed, as John Selden aptly observed nearly three hundred years ago: "'Ignorance of the law excuses no man; not that all men know the law, but because it is an excuse every man will plead, and no man can tell how to confute him.'" *United States v. Barker*, 514 F.2d 208, 232 (D.C. Cir. 1975) (Bazelon, J., concurring) (quoting J. SELDEN, TABLE TALK-LAW 61 (3d ed. 1716)).

including the warning about possession of firearms and ammunition.

The evidence was sufficient to support Arledge's conviction.[5]

C. Second Amendment

Arledge argues his conviction under § 922(g)(8) violates the Second Amendment. As both Arledge's counsel and the government correctly note, § 922(g)(8) does not violate the Second Amendment. *United States v. Bayles*, 310 F.3d 1302, 1306-07 (10th Cir. 2002); *see also United States v. Baer*, 235 F.3d 561, 564 (10th Cir. 2000) (concluding defendant's § 922(g)(1) conviction (felon-in-possession of a firearm) did not violate the Second Amendment).

D. Use of Prior Uncounseled Misdemeanor Convictions

Arledge contests the use of his prior uncounseled misdemeanor convictions to calculate his criminal history category. The pre-sentence report (PSR) listed nine offenses. Arledge objected to the use of two of the offenses. The court noted one of the objectionable offenses did not affect Arledge's criminal history category and deleted the other. Arledge concedes he did not object to the use of

_____

[5] Arledge also contends his prosecution and conviction violated his due process rights because he was not aware he was subject to a protective order. He cites the general principle that due process requires notice of a court order to parties who will be directly affected by it. *See*, *e.g.*, *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."). In light of our conclusion that the government provided sufficient evidence from which the jury could reasonably find Arledge was in fact served with the emergency protective order, his argument fails.

the remaining offenses included in the PSR to calculate his criminal history category. Therefore, our review is for plain error. *United States v. Easter*, 981 F.2d 1549, 1557 (10th Cir. 1992). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (en banc), *cert. denied*, 126 S.Ct. 495 (2006). We find no error.

Arledge does not identify the misdemeanor convictions he claims were inappropriately used to compute his criminal history. Of the three non-objected to misdemeanor convictions which contributed to Arledge's criminal history category, the PSR indicates one was counseled. The PSR is silent as to whether Arledge was represented by counsel or waived his right to counsel in the two remaining convictions. Nevertheless, "[o]nce the prosecution establishes the existence of a conviction, the defendant must prove by a preponderance of the evidence that the conviction was constitutionally infirm." *United States v. Windle*, 74 F.3d 997, 1001 (10th Cir. 1996); *see United States v. Johnson*, 973 F.2d 857, 862 (10th Cir. 1992). Arledge did not attempt to satisfy this burden; his argument fails.

E. Booker

Arledge objected to an enhancement in the PSR under *Blakely v. Washington*, 542 U.S. 296 (2004). The probation officer removed the

enhancement prior to sentencing, rendering his objection moot. On appeal, neither Arledge nor his counsel challenged his sentence under *United States v. Booker,* 543 U.S. 220 (2005). However, the government raised the issue, acknowledging the district court committed non-constitutional *Booker* error at sentencing by applying the sentencing guidelines in a mandatory fashion. It claims the error was harmless because Arledge was sentenced in the middle of the sentencing range and "there is no reason to think the court would impose a different sentence on remand." (Appellee's Br. at 19.) We required Arledge's counsel to reply to the *Booker* issue. In the reply brief, counsel agrees with the government's assessment.

Because Arledge objected in the district court under *Blakely*, we review for harmless error under Rule 52(a) of the Federal Rules of Criminal Procedure. *United States v. Marshall,* 432 F.3d 1157, 1160 (10th Cir. 2005); *United States v. Dowell*, 430 F.3d 1100, 1112 (10th Cir. 2005), *cert. denied*, 127 S.Ct. 44 (2006); *see also United States v. Montgomery*, 439 F.3d 1260, 1263 (10th Cir. 2006) ("[W]e review whether the error was harmless by a preponderance of the evidence. Harmless error is that which did not affect the district court's selection of the sentence imposed. The burden of proving the error is harmless is on the beneficiary of the error.") (citations and quotations omitted). Rule 52(a) provides: "Any error . . . that does not affect substantial rights must be disregarded."

"[T]here are two distinct types of error that a court sentencing prior to

*Booker* could make." *Gonzalez-Huerta*, 403 F.3d at 731.

> [C]onstitutional *Booker* error occurs when a district court errs by
> relying upon judge-found facts, other than those of prior convictions,
> to enhance a defendant's sentence mandatorily . . . .
> [N]on-constitutional *Booker* error occurs when a district court err[s]
> by applying the Guidelines in a mandatory fashion, as opposed to a
> discretionary fashion, even though the resulting sentence was
> calculated solely upon facts that were admitted by the defendant,
> found by the jury, or based upon the fact of a prior conviction.

*United States v. Delacruz-Soto*, 414 F.3d 1158, 1161-62 (10th Cir. 2005) (citation

and quotations omitted).

Because Arledge's sentence was based solely upon facts found by the jury,

the district court committed non-constitutional *Booker* error by applying the

guidelines in a mandatory fashion. While the district court did not impose an

alternative sentence, we nevertheless conclude the court's non-constitutional

*Booker* error was harmless. *See, e.g., United States v. Serrano-Dominguez*, 406

F.3d 1221, 1222 (10th Cir. 2005) (alternative sentencing pending *Booker*

decision). Arledge's guideline range was 21-27 months imprisonment. The court

carefully considered the factors set forth in 18 U.S.C. § 3553(a), as required by

*Booker*.[6] 543 U.S. at 259-60. It then sentenced Arledge to 24 months, the middle

---

[6] Specifically, the court stated:

> The sentence imposed is within the guideline range, and that
> range does not exceed 24 months, and the Court finds no
> reason to depart from the sentence called for by application of
> the guidelines.

of the range. Unlike in cases where the sentence imposed was at the bottom of the guideline range leading us to question if the court would have imposed the same sentence after *Booker*, *see, e.g., United States v. Labastida-Segura*, 396 F.3d 1140, 1143 (10th Cir. 2005), here we have a sentence in the middle of the range, imposed after careful consideration of the relevant sentencing factors and argument from counsel. Moreover, the court refused a requested downward departure. There is no reason to think the district court would impose a lighter sentence on remand. The court's non-constitutional *Booker* error was harmless. *See Dowell*, 430 F.3d at 1112 (where the district court had discretion to impose a lower sentence but instead imposed a sentence in the middle of the guideline range, "its decision not to exercise discretion and impose a lower sentence renders any non-constitutional *Booker* error harmless.") (quotations omitted).

F. Ineffective Assistance of Counsel

Arledge contends his trial counsel was ineffective for failing to (1) contest the government's motion in limine precluding him from testifying that he was acquitted of the state court charges arising from the allegations underlying the

> In formulating the sentence imposed in this case the Court has considered the nature and circumstances of the offense and the characteristics of the defendant. A sentence at the middle of the guideline range was imposed to provide just punishment, to promote respect for the law, and to protect the public.

(R. Second Supp. App. Vol. I at 8.)

-13-

protective order and (2) attack the validity of his prior uncounseled misdemeanor convictions used to calculate his criminal history category.  "Ineffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal.  Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed." *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc).  Arledge has failed to show his case is one of those "rare instances" in which we should hear an ineffective counsel challenge on direct review. *Id*.  We decline to review this issue.

Counsel's motion to withdraw is GRANTED.  This case presents no "legal points arguable on their merits (and therefore not frivolous)"[7]; the appeal is DISMISSED.  Arledge's request for appointment of new counsel is DENIED.

ENTERED FOR THE COURT

Terrence L. O'Brien
Circuit Judge

---

[7] *Anders*, 386 U.S. at 744.