**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

　　　　Plaintiff-Appellee,

v.

JACK DOWELL,

　　　　Defendant-Appellant.

No. 03-1341

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 01-CR-395-M)**

---

Nancy Holton, (Stacey L. Ross, Golden, Colorado, with her on the briefs), Boulder, Colorado, for Defendant-Appellant Jack Dowell.

Martha A. Paluch, Assistant United States Attorney (John W. Suthers, United States Attorney, with her on the brief), Denver, Colorado, for Plaintiff-Appellee United States of America.

---

Before **EBEL,** Circuit Judge, **HOLLOWAY**, Senior Circuit Judge, and **LUCERO**, Circuit Judge.

---

**EBEL**, Circuit Judge.

---

Defendant-Appellant Jack Dowell appeals[1] his convictions for destroying

government property by fire, violating 18 U.S.C. §§ 2, 844(f)(1) & (2),[2] and

forcibly interfering with IRS employees and administration, violating 18 U.S.C.

_____

[1]This court granted the Government's motion to consolidate this appeal
with the appeal of Dowell's co-defendant, James Cleaver. We will address
Cleaver's appeal, No. 03-1510, in a separate order and judgment.

[2]Title 18, U.S.C. § 2 provides that

(a) Whoever commits an offense against the United States or aids,
abets, counsels, induces or procures its commission, is punishable as
a principal.

(b) Whoever willfully causes an act to be done which if directly
performed by him or another would be an offense against the United
States, is punishable as a principal.

Title 18, U.S.C. § 844(f) provides, in pertinent part, that

(1) Whoever maliciously damages or destroys, or attempts to damage
or destroy, by means of fire or an explosive, any building, vehicle, or
other personal or real property in whole or in part owned or
possessed by, or leased to, the United States, or any department or
agency thereof, or any institution or organization receiving Federal
financial assistance, shall be imprisoned for not less than 5 years and
not more than 20 years, fined under this title, or both.

(2) Whoever engages in conduct prohibited by this subsection, and
as a result of such conduct, directly or proximately causes personal
injury or creates a substantial risk of injury to any person, including
any public safety officer performing duties, shall be imprisoned for
not less than 7 years and not more than 40 years, fined under this
title, or both.

§ 2 and 26 U.S.C. § 7212(a).[3]  He also argues that United States v. Booker, 543

U.S. 220, 125 S. Ct. 738 (2005), entitles him to resentencing.  Having jurisdiction

under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we AFFIRM Dowell's

convictions and his sentence.[4]

## I.    FACTS

The evidence at trial established the following:  Dowell's co-defendant

James Cleaver devised a plan to set fire to the Colorado Springs office of the

Internal Revenue Service ("IRS").  Cleaver got several members of his

"constitutional law group" to help him carry out his plan, including Dowell,

Dowell's cousin Thomas Dowell, and Ronald Sherman.  On May 3, 1997, the

group met at a bar at approximately 10:30 p.m.  From there, Sherman drove the

---

[3]Title 26, U.S.C. § 7212(a) provides that

> [w]hoever corruptly or by force or threats of force (including any threatening letter or communication) endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity under this title, or in any other way corruptly or by force or by threats of force (including any threatening letter or communication) obstructs or impedes, or endeavors to obstruct or impede, the due administration of this title, shall, upon conviction thereof, be fined not more than $5,000, or imprisoned not more than 3 years, or both, except that if the offense is committed only by threats of force, the person convicted thereof shall be fined not more than $3,000, or imprisoned not more than 1 year, or both.  The term "threats of force," as used in this subsection, means threats of bodily harm to the officer or employee of the United States or to a member of his family.

[4]We grant defense counsel Nancy Holton's request to withdraw.

group to the IRS building and dropped them off. Dowell positioned himself in the median next to the building. When the traffic cleared, Dowell, using a two-way radio, let the group know the coast was clear. Cleaver and Thomas Dowell then broke the glass door to get into the building and forced their way into the IRS office. There, they opened all the unlocked filing cabinets and poured gasoline throughout the files and the office. At one point while Thomas Dowell and Cleaver were inside the building, Dowell, as the lookout, radioed them that there was someone walking through the building's parking lot. After that person was gone, Cleaver set a fifteen-minute fuse to ignite the gasoline. Cleaver also spray painted the letters AAR several places in the building. Those letters stood for Army of the American Republic.

The men then returned to the bar. Cleaver and the two Dowells had a drink, but Sherman went immediately home.

From the beginning of the investigation into the fire, police believed Sherman was involved. Sherman, however, testified before a grand jury, in October 1997, that he had been playing pool at the bar with Cleaver all night on May 3, 1997, and denied any involvement in the crime. Over the next few years, federal agents would contact Sherman at home or when he was driving his cab and ask him about the fire. Federal agents contacted Sherman once every three to six months, or about six to seven times over the next four years. Sherman always

4

denied any knowledge of the crime. Eventually federal agents informed Sherman that they were getting close to solving the case and would be charging him with the crime. At this point, Sherman agreed to cooperate. Sherman eventually pled guilty to one count of perjury for lying to the grand jury and agreed to testify against the others. When federal authorities later arrested Dowell in Florida, he confessed to his part in the crime.

In 2001, the Government indicted Cleaver, Dowell, and Thomas Dowell. The district court severed Dowell's trial from that of his co-defendants. A jury convicted Dowell of destroying government property by fire, violating 18 U.S.C. §§ 2, 844(f)(1) & (2); and forcibly interfering with IRS employees and administration, violating 18 U.S.C. § 2 and 26 U.S.C. § 7212(a). The district court sentenced Dowell to 360 months in prison.[5] Dowell appeals both his convictions and his sentence.

## II.    ISSUES

**A.    Whether the district court denied Dowell due process when it did not conduct a hearing on the voluntariness of Sherman's confession.**

On the first day of trial, Dowell filed a motion to exclude Sherman's testimony, arguing police had coerced Sherman's confession by contacting him

---

[5]A jury later acquitted Thomas Dowell. Another jury convicted Cleaver on four charges and the district court sentenced him to 400 months in prison.

"continuously" and telling him that he would face twenty-five to forty years in prison if he did not cooperate. Dowell based this motion to exclude Sherman's trial testimony on the testimony Sherman gave during a pretrial hearing on co-defendant Cleaver's suppression motion. The district court denied Dowell's motion to exclude Sherman's testimony at trial, holding any coercion would go to Sherman's credibility and Dowell could bring this out on cross-examination. On appeal, Dowell now asserts that the district court deprived him of due process when it did not conduct an evidentiary hearing to determine whether Sherman's confession to police was voluntary.

Because Dowell never requested that the district court conduct such a hearing, however, we review Dowell's argument only for plain error. See Fed. R. Crim. P. 52(b); see also United States v. Gerber, 24 F.3d 93, 95 (10th Cir. 1994) (applying plain-error review where defendant failed to request evidentiary hearing). "Under that test, before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights." United States v. Cotton, 535 U.S. 625, 631 (2002) (quotations, alterations omitted). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (quotations, alterations omitted). Here, Dowell is unable to

6

establish that the district court erred in failing to conduct an evidentiary hearing on whether Sherman's confession was voluntary.

In Jackson v. Denno, the Supreme Court held that

> a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, and even though there is ample evidence aside from the confession to support the conviction.

378 U.S. 368, 376 (1964) (citations omitted). Further, the defendant has a "constitutional right at some stage in the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the confession."[6] Id. at 376-77. When a defendant questions the voluntariness of a confession, a hearing is mandated. See United States v. Miller, 987 F.2d 1462, 1464, 1465 (10th Cir. 1993) (applying 18 U.S.C. § 3501(a)). Relying on this authority, Dowell now argues that, once he questioned the voluntariness of Sherman's confession, the district court was required sua sponte to conduct an evidentiary hearing on that issue.

In Jackson v. Denno, however, the defendant was challenging the

---

[6]"The requirement for a hearing on the voluntariness of a defendant's confession, articulated in Jackson v. Denno . . . , is codified at 18 U.S.C. § 3501(a)." United States v. Miller, 987 F.2d 1462, 1464 (10th Cir. 1993). Dowell, however, does not make any argument specifically based upon § 3501(a).

7

voluntariness of his own confession.  See 378 U.S. at 372.  And the cases applying Jackson v. Denno's hearing requirement also address only the voluntariness of the defendant's own statement.  See, e.g., United States v. Roberts, 14 F.3d 502, 516 (10th Cir. 1993); Miller, 987 F.2d at 1464, 1465.  "The procedure [the Supreme Court] established in Jackson was designed to safeguard the right of an individual, entirely apart from his guilt or innocence, not to be compelled to condemn *himself* by *his own* utterances."  Lego v. Twomey, 404 U.S. 477, 485 (1972) (emphasis added); see also Mincey v. Arizona, 437 U.S. 385, 398 (1978) (noting "any criminal trial use against a defendant of *his* involuntary statement is a denial of due process of law," citing Jackson v. Denno) (emphasis altered).  Here, on the other hand, Dowell is challenging the voluntariness, not of his own confession, but of that of a Government witness.

It is clear that Dowell does have standing to challenge the voluntariness of a witness's confession.  See United States v. Gonzales, 164 F.3d 1285, 1289 (10th Cir. 1999); see also Clanton v. Cooper, 129 F.3d 1147, 1157-58 (10th Cir. 1997) (42 U.S.C. § 1983 action).  In doing so, however, Dowell is not seeking to vindicate the witness's Fifth Amendment right against self-incrimination, but instead is seeking to protect his own right to due process; that is, to a fair trial. See Gonzales, 164 F.3d at 1289; Clanton, 129 F.3d at 1157-58.

> [T]here is a significant difference in the burden of proof applicable
> to a claim under the Fifth Amendment and [Dowell's] claim that the

8

testimony of a third party is subject to exclusion as a matter of due process. The burden is on the [Government] to demonstrate the voluntariness of a defendant's admissions or confessions . . . . By contrast, when a defendant makes a motion to exclude coerced testimony of a third party on due process grounds, the burden of proving improper coercion is upon the defendant.

People v. Badgett, 895 P.2d 877, 886-87 (Cal. 1995). "Unless a serious factual dispute can be shown to exist, and one in which, if successful, the defense would be entitled to exclusion, no hearing at all is necessary." LaFrance v. Bohlinger, 499 F.2d 29, 36 (1st Cir. 1974); see also State v. Samuel, 643 N.W.2d 423, 432-33 (Wis. 2002) (requiring the defendant to allege sufficient facts that, if true, would entitle him to exclude the witness's statement, before district court must conduct an evidentiary hearing). In this case, Dowell failed to meet his burden of presenting sufficient evidence to create a "serious factual dispute" suggesting that Sherman's confession to police was involuntary. LaFrance, 499 F.2d at 36.

"[T]he standard for determining whether a statement was voluntary is the same whether we are dealing with a defendant or a third party." Gonzales, 164 F.3d at 1289 n.1.

A statement is involuntary if the government's conduct caused the witness' will to be overborne and his capacity for self-determination critically impaired. In determining whether a statement was freely and voluntarily given, the courts consider the totality of the circumstances. The relevant circumstances embrace both the characteristics of the accused and the details of the interrogation. Relevant factors include the [witness's] age, intelligence, and education, the length of detention and questioning, the use or threat of physical punishment, whether Miranda warnings were given, the

9

accused's physical and mental characteristics, the location of the interrogation, and the conduct of the police officers.

Id. at 1289 (citations, quotations, alterations omitted).

In his pretrial motion to exclude Sherman's testimony, Dowell alleged that Sherman's confession was involuntary only because federal agents contacted Sherman "continuously" and told him if he did not cooperate "he would be facing 25 to 40 years in jail . . . , but that they would go easy on him if he 'cooperated.'" In support of those allegations, Dowell submitted the transcript of Sherman's testimony during the earlier pretrial suppression hearing. At that hearing, Sherman testified that federal agents talked to him right after the fire and then would contact him every three to six months at his home or work, but for only a total of six or seven times over four years. During these times, federal agents told Sherman that they thought he was involved in the fire and that there were going to be arrests and he would be implicated. Federal agents also told Sherman he was looking at twenty-five to forty years, but they might go easy on him if he cooperated. None of these contacts involved custodial interrogations. Sherman did testify that he generally feared the FBI and worried that federal agents would kill his dog, ransack his house and send Sherman to a re-education camp. But none of the federal agents ever threatened him with physical harm.

Sherman's testimony at the pretrial suppression hearing was insufficient to create a "serious factual dispute" as to whether Sherman's confession to police

10

was voluntary. See LaFrance, 499 F.2d at 36. While "a promise of leniency is relevant to determining whether a confession was involuntary," this court considers that as only one factor to be considered within the totality of the circumstances. Clanton, 129 F.3d at 1158-59 (concluding, in § 1983 action, that there was genuine factual dispute as to whether witness's confession was voluntary, where officers promised witness leniency and lied to him about how much evidence they had against him). And, although officers did contact Sherman on a continuing basis, they did so only six or seven times in four years. Further, the federal agents's estimation that Sherman faced a possible sentence of twenty-five to forty years appears fairly accurate, in light of the sentences the district court imposed on Sherman's co-defendants. Considering the totality of the circumstances in this case, therefore, the evidence before the district court was insufficient to create a "serious factual dispute" as to whether Sherman's will was overborne and his confession involuntary. In light of that, the trial court did not err in failing to conduct an evidentiary hearing. See United States v. Merkt, 794 F.2d 950, 961-62 (5th Cir. 1986) (holding facts concerning voluntariness of witnesses's testimony did not warrant evidentiary hearing). Dowell, therefore, has failed to meet the first prong of the plain-error analysis, establishing that there was any error. He is not entitled to relief on this claim.

**B.** **Whether the prosecutor improperly vouched for Sherman's credibility.**

Next, Dowell argues that, on two occasions during closing argument, the prosecutor improperly vouched for Sherman's credibility, resulting in an unfair trial. Defense counsel, during his closing argument, challenged Sherman's credibility, pointing out that 1) Sherman had originally testified before the grand jury that he was not involved in the arson, and 2) in the affidavit in which he first admitted his involvement in the fire, Sherman did not include all the details to which he later testified at Dowell's trial. In response to defense counsel's argument, the prosecutor argued, in his rebuttal closing argument, that

> [d]efense counsel says in his argument that the Ron Sherman original affidavit [he gave police when he decided to cooperate] is false. It was not false. Everything in it's true. Ron Sherman told you under oath in his testimony that that was just a summary statement. He told you under oath he wasn't going to give all the details at that time.

Then, after addressing defense counsel's argument that the federal agents's testimony was also not credible, the prosecutor further argued to the jury that "[t]he testimony of the [federal] agents is credible. The testimony of Ron Sherman is credible and believable."

Because Dowell failed to object to either of these remarks during the trial, we again review only for plain error. See Fed. R. Crim. P. 52(b); see also Cotton, 535 U.S. at 631. Dowell has failed to establish that these remarks were plain error.

This court "give[s] prosecutors considerable latitude where, as here,

12

defense counsel arguably 'invites' a response" by challenging the government witnesses's credibility. United States v. Broomfield, 201 F.3d 1270, 1276 (10th Cir. 2000); see also United States v. Young, 470 U.S. 1, 12-13 (1985) (noting "if the prosecutor's [erroneous] remarks were 'invited,' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction").

Further, even if the prosecutor's remarks were erroneous, they would not rise to the level of "'plain error' warranting the court to overlook the absence of any objection by the defense," again because the prosecutor made these remarks only in response to defense counsel's argument. Young, 470 U.S. at 14 (holding prosecutor's erroneous remarks did not amount to plain error where defense counsel's own improper argument invited prosecutor's response).

**C.      Whether Dowell is entitled to resentencing under Booker.**

Finally, Dowell asserts that he is entitled to resentencing. In calculating Dowell's sentence, the district court applied the sentencing guidelines terrorism enhancement, U.S.S.G. § 3A1.4.[7] Relying on Blakely v. Washington, 542 U.S.

---

[7]The district court used the 2002 version of the sentencing guidelines, which provides that

> (a) If the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, increase by 12 levels; but if the resulting offense level is less than 32, increase to level 32.

(continued...)

13

296 (2004), and now <u>Booker</u>, Dowell argues that in applying that enhancement, the district court violated the Sixth Amendment.[8]  <u>Booker</u> requires that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the statutory maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."  125 S. Ct. at 756.  Because Dowell raised this argument at sentencing,[9] we review the issue <u>de novo</u>.  <u>See United States v. Stiger</u>, 413 F.3d 1185, 1191 (10th Cir.), <u>cert. denied</u>, 2005 WL 3144402 (2005).

The Government concedes that the district court's application of the terrorism enhancement violated the Sixth Amendment and warrants resentencing.

---

[7](...continued)
(b) In each such case, the defendant's criminal history category from Chapter Four (Criminal History and Criminal Livelihood) shall be Category VI.

U.S.S.G. § 3A1.4.

[8]In his brief, Dowell also asserts that his sentence violates the Fifth Amendment.  Because Dowell never further develops that argument and because we perceive no Fifth Amendment violation, this claim does not warrant relief.

[9]Dowell raised this objection before the Supreme Court decided either <u>Blakely</u> or <u>Booker</u>.  In raising this objection at sentencing, Dowell argued that he "should have received notice of [the terrorism enhancement] in the charging document, or, in the alternative, an interrogatory provided to the jury to determine the applicability of this adjustment beyond a reasonable doubt."  He further argued that he "was entitled to a jury finding beyond a reasonable doubt as to whether or not there was a risk or death was caused before the terrorism enhancement can be applied."  That is sufficient to preserve his <u>Booker</u> arguments.

14

We are not, however, bound by the Government's concession and instead, in an effort to use judicial resources most efficiently, we will conduct our own independent review of the record. See United States v. Resendiz-Patino, 420 F.3d 1177, 1182-83 (10th Cir. 2005) (disregarding Government's concession of constitutional Booker error). After independently considering the question, we affirm Dowell's sentence.

**1. Whether applying the terrorism enhancement violated the Sixth Amendment.**

The terrorism enhancement applies in this case if Dowell's "offense is a felony that involved . . . a federal crime of terrorism." U.S.S.G. § 3A1.4(a). The Guidelines further define "[f]ederal crime of terrorism" by referring to 18 U.S.C. § 2332b(g)(5), see U.S.S.G. § 3A1.4, application note 1, which in turn defines "[f]ederal crime of terrorism" to be an offense that "is calculated to influence or affect the conduct of the government by intimidation or coercion, or to retaliate against government conduct; and" that violates one of a number of specified federal statutes, including 18 U.S.C. § 844(f)(2). For the terrorism enhancement to apply in this case, then, Dowell's offense must have involved an offense 1) "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct;" and 2) that violated 18 U.S.C. § 844(f)(2). Because the jury's verdict encompassed these two factual findings, the district court did not violate the Sixth Amendment by applying the

15

terrorism enhancement.

First, in order for the terrorism enhancement to apply, Dowell's offense must have involved an offense "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." U.S.S.G. § 3A1.4, application note 1; 18 U.S.C. § 2332b(g)(5)(A). The jury essentially made this factual finding when it convicted Dowell of interfering with the IRS. To convict Dowell of that offense, the jury had to find, beyond a reasonable doubt, that Dowell "endeavored to obstruct or impede the due administration of the Internal Revenue laws by the use of force" and that Dowell "did so knowingly and intentionally." 26 U.S.C. § 7212(a). The trial court further instructed jurors that

> [t]he phrase due administration of the Internal Revenue laws includes the Internal Revenue Service of the Department of the Treasury carrying out its lawful functions in the ascertaining of income, computing, assessing and collecting of income taxes, the auditing of tax returns and records, and the investigation or possible criminal violations of the Internal Revenue laws, such as the filing of false or fraudulent income tax returns.
>
> The term endeavor describes any efforts or act to obstruct or impede the due administration of the Internal Revenue laws. The endeavor need not be successful, but it must at least have had a reasonable tendency to obstruct or impede the due administration of the Internal Revenue laws.

The jury's finding beyond a reasonable doubt that Dowell interfered with the IRS, therefore, sufficed to provide the factual finding that Dowell's offense        was

16

"calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." U.S.S.G. § 3A1.4, application note 1; 18 U.S.C. § 2332b(g)(5)(A).

Second, in order for the terrorism enhancement to apply, the jury had to find beyond a reasonable doubt that Dowell's offense involved a violation of § 844(f)(2). See U.S.S.G. § 3A1.4, application note 1; 18 U.S.C. § 2332b(g)(5)(B)(i). The jury specifically made this factual finding beyond a reasonable doubt when the jury convicted Dowell of violating § 844(f)(2).[10] Therefore, the jury made the two factual findings necessary to support applying the terrorism enhancement: Dowell's offense involved an offense 1) "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct;" and 2) that violated 18 U.S.C. § 844(f)(2). U.S.S.G. § 3A1.4, application note 1; 18 U.S.C. § 2332b(g)(5). Therefore, the district court's application of the terrorism enhancement did not violate the Sixth Amendment.

Dowell asserts that, in order for the district court to apply the terrorism enhancement, the Government had to prove a third element, that in violating

---

[10]Although the Government charged Dowell with violating 18 U.S.C. § 844(f)(1) and (2), the jury specifically convicted Dowell of violating § 844(f)(2) when it found, by special interrogatory, that his "conduct create[d] a substantial risk of injury to others."

17

18 U.S.C. § 844(f)(2), Dowell "risked or caused death."  We reject that argument.

Dowell derives this additional element from language in 18 U.S.C. § 2332b(g)(5)(B)(i)'s parenthetical following that section's reference to § 844(f)(2) and (3): "the term 'Federal crime of terrorism' means an offense that . . . is a violation of . . . 844(f)(2) or (3) (relating to arson and bombing of Government property *risking or causing death*)."  18 U.S.C. § 2332b(g)(5)(B)(i) (emphasis added).  Section 2332b(g)(5)(B)(i)'s parenthetical, however, is merely a shorthand summary of the offenses set forth in § 844(f)(2) and (3) and is not intended to engraft new elements into a § 844(f)(2) offense.

Section 844(f)(1) sets forth the basic conduct underlying those offenses:

> [w]hoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other personal or real property in whole or in part owned or possessed by, or leased to, the United States, or any department or agency thereof, or any institution or organization receiving Federal financial assistance, shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both.

18 U.S.C. § 844(f)(1).  Section 844(f)(2), then, provides enhanced penalties for such conduct that also "directly or proximately causes personal injury or creates a substantial risk of injury to any person."  Finally, § 844(f)(3) provides even greater enhanced penalties for such conduct that "directly or proximately causes the death of any person."

When § 2332b(g)(5)(B)(i) included a parenthetical referring to § 844(f)(2)

18

and (3), there is no suggestion that Congress intended to engraft additional elements onto those crimes set forth in § 844(f)(2) and (3).  Rather, § 2332b(g)(5)(B)(i)'s parenthetical contains only a descriptive reference to the general subject matter of those offenses.  The reference in the parenthetical to "risking or causing death" is obviously because the parenthetical seeks to describe § 844(f)(3) as well as § 844(f)(2).

Section 2332b(g)(5)(B)(i) lists a number of other statutes, in addition to § 844(f)(2) and (3), each with its own parenthetical.  A review of those other parentheticals confirms that § 2332b(g)(5)(B)(i)'s parentheticals merely reflect the title or a shorthand or abbreviated reference to those other listed offenses.  In many situations, those other listed offenses include a number of elements or nuances that § 2332b(g)(5)(B)(i)'s parentheticals do not, and are not meant to, capture.  Therefore, we conclude that the descriptive language in § 2332b(g)(5)(B)(i)'s parenthetical describing the offenses in § 844(f)(2) and (3) does not set forth any additional elements that the Government had to prove in this case before the district court could apply the terrorism enhancement.  Cf. United States v. Graham, 275 F.3d 490, 517-18 (6th Cir. 2001) (looking to elements of underlying offense listed in § 2332b(g)(5)(B)(i), rather than language of § 2332b(g)(5)(B)(i)'s parenthetical).

**2.  Whether the district court's non-constitutional Booker error warrants resentencing.**

19

The district court did commit non-constitutional <u>Booker</u> error when, in imposing Dowell's sentence, the court treated the federal sentencing guidelines as mandatory rather than discretionary. <u>See</u> <u>United States v. Gonzalez-Huerta</u>, 403 F.3d 727, 731-32 (10th Cir.) (en banc), <u>cert. denied</u>, 126 S. Ct. 495 (2005). Because Dowell adequately preserved his <u>Booker</u> arguments at sentencing, we review this error under Fed. R. Crim. P. 52(a). Rule 52(a) provides that "[a]ny error . . . that does not affect substantial rights must be disregarded." "In non-constitutional harmless error cases, such as this, the government bears the burden of demonstrating, by a preponderance of the evidence, that [Dowell's] substantial rights were not affected." <u>United States v. Martinez</u>, 418 F.3d 1130, 1135-36 (10th Cir. 2005), <u>pet. for cert. filed</u>, (U.S. Nov. 10, 2005) (No. 05-7524). "An error with respect to sentencing does not affect substantial rights when it did not affect the sentence imposed by the district court." <u>United States v. Paxton</u>, 422 F.3d 1203, 1207 (10th Cir. 2005) (quotation omitted).

Here, the applicable guideline range was 324-405 months. The district court imposed a 360-month sentence, which fell in the middle of that range. Even treating the guidelines as mandatory, the district court had the discretion to impose a sentence anywhere within the applicable guideline range. In this case, then, the district court exercised that discretion to impose a sentence in the middle of the range. The court could have imposed a lower sentence, but chose not to do

20

so. "When the district court had undoubted discretion to reduce the sentence below what it imposed, its decision not to exercise discretion and impose a lower sentence renders any nonconstitutional Booker error harmless." Paxton, 422 F.3d at 1207 (quotation omitted). In this case, therefore, "[w]e have no reason to think that the district court would impose a different sentence on remand."[11] Id. The record thus establishes that the district court's non-constitutional Booker error did not affect Dowell's substantial rights and was, therefore, harmless. See id.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM both Dowell's convictions as well as his sentence.

---

[11]Our conclusion is further supported by the district court's comments during the sentencing proceeding expressly indicating that a 360-month sentence was warranted in Dowell's case:

> [M]y view of the case of Mr. Dowell is that this was an act of terrorism. This is exactly what the law was designed for. And in addition, your approach here to the requirement that you testify at the trial of Thomas Dowell demonstrates that [you're] totally unrepentant with respect to this, and that your attitude towards the United States Government ha[s] not changed. And, accordingly, I'm going to sentence you to 30 years, 360 months.
>
> I understand your age [57] and circumstances, but this is under the requirements of [18 U.S.C. §] 3553(a)(2)(A) ["the need for the sentence imposed . . . to reflect the serious of the offense, to promote respect for the law, and to provide just punishment for the offense"], a matter of a determination here on what is just punishment for the offense, and I'm sentencing you accordingly.

21