**F I L E D**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

GERALD BROWN, a/k/a "Skeet,"

Defendant-Appellant.

No. 05-8111
(D. of Wyo.)
(D.C. No. 05-CR-77-ABJ)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN**, **SEYMOUR**, and **TYMKOVICH**, Circuit Judges.[**]

---

A federal jury found Gerald Adrian Brown guilty on three counts involving the distribution of cocaine and cocaine base. On appeal, he contends the district court 1) abused its discretion by denying three motions for continuance, and 2) erred by considering evidence of cocaine sales proven only by a preponderance of the evidence at sentencing. We find Brown's claims lack merit and AFFIRM.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 (eff. Dec. 1, 2006) and 10th Cir. R. 36.3 (eff. Jan. 1, 2007).

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

# I. Background

In mid-Summer 2004, an informant notified local police officers about a man dealing crack cocaine in the Cheyenne, Wyoming region. The informant knew the dealer as "Skeet," a resident of Colorado Springs, Colorado. She agreed to buy drugs from Skeet while wearing a wire so the police could record the transactions. Skeet was later identified as the defendant, Gerald Adrian Brown.

On July 19, 2004, the informant and Brown arranged to meet for a purchase of crack cocaine. Brown later changed the plan and had the informant meet with one of "his girls," Brenda Benson, at a new location. The informant purchased about seven grams of crack cocaine for $350 from Benson. Benson confirmed the transaction at trial and testified she made the delivery on Brown's behalf.

Two days later, on July 21, the informant again arranged to purchase cocaine from Brown. While wearing a wire, she purchased approximately 6.3 grams of powder cocaine from Brown directly. Finally, on August 13, 2004, the informant made another purchase of crack cocaine from Brown, again wearing a wire.

Brown was subsequently charged with 1) one count of aiding and abetting in the distribution of cocaine base, 2) one charge of distributing cocaine base, and 3) one charge of distributing cocaine. Represented by counsel, Brown pleaded not guilty on April 22, 2005, and his trial was set for June 28, 2005. On May 17, 2005, a new counsel entered an appearance on Brown's behalf, and the district

court granted substitution of counsel on May 19. On June 2, a fortnight later, Brown's new counsel filed a motion to continue the trial. After a hearing on June 15, the district court denied the motion.

Meanwhile, on June 8 and June 16, the government filed a Request for Notice of Alibi Defense and an Amended Request for Notice of Alibi Defense, asking that Brown disclose any alibi witnesses he planned to use at trial. On June 24, the defense responded to the requests by filing a list of nine potential alibi witnesses as well as a second motion to continue. The district court denied the new motion to continue on June 28 and the trial commenced the next day as scheduled.

During trial, Brown's counsel made an oral third motion to continue, citing problems with locating witnesses and bringing them to trial. The district court denied the motion. On July 1, after a three-and-one-half-day trial, the jury returned a guilty verdict on all counts. Brown was subsequently sentenced to 165 months imprisonment, four years of supervised release, a fine of $1,000, and a special assessment of $300.

## II. Discussion

Brown argues on appeal that the district court 1) abused its discretion by denying his three motions for continuance, and 2) erred by considering evidence of cocaine sales proven only by a preponderance of the evidence at sentencing.

*A. Denials of Motions for Continuance*

We afford substantial discretion to district courts in considering requests to continue trial. *United States v. Rivera*, 900 F.2d 1462, 1475 (10th Cir. 1990) (citing *Morris v. Slappy*, 461 U.S. 1, 11 (1983)). "We review the denial of a motion for continuance of trial for abuse of discretion and will find error only if the district court's decision was arbitrary or unreasonable and materially prejudiced the defendant." *United States v. Diaz*, 189 F.3d 1239, 1247 (10th Cir. 1999) (internal quotations omitted).

In determining whether the trial court abused its discretion in denying a continuance, we look to four factors, including: 1) the diligence of the party requesting the continuance, 2) the likelihood the continuance, if granted, would accomplish the purpose underlying the party's expressed need for the continuance, 3) the inconvenience to the opposing party, its witnesses, and the court resulting from the continuance, and 4) the need asserted for the continuance and the harm the appellant might suffer as a result of the district court's denial of the continuance. *Id.*

*1. First Request for Continuance*

At the hearing on the first continuance request, Brown's counsel based his request on three grounds: 1) at the time, he had not yet received grand jury transcripts, 2) he thought some discovery might be outstanding, and 3) he specifically felt more time was needed to respond to the government's alibi defense request. In response, the government pointed out the grand jury

transcripts were readily available from the court reporters and that discovery had been substantially completed. The district court concluded the motion for continuance was largely based on the need to respond to the request for alibi defense information, which it found to be a simple task; therefore, it denied the motion. The court instead provided the defense an additional eight days to respond to the alibi notice request.

Applying the four *Diaz* factors, we find the district court did not abuse its discretion by denying the first continuance request. First, the diligence factor cuts in favor of neither party. Brown's counsel sought the continuance a little over two weeks after taking over the case. When counsel entered, he was aware only 42 days remained until trial. But he waited 16 days to file his motion for continuance. While a two-week delay is not necessarily tardy, it was not particularly diligent, given the rapidly approaching trial date.

The second factor cuts in favor of Brown. The defense requested the continuance to allow more time for discovery, to acquire grand jury transcripts, and to respond to the request for alibi witnesses. Pushing the trial date back would likely provide Brown's counsel more time to accomplish the stated tasks.

The government makes no argument that the third factor, inconvenience to the opposing party and its witnesses, cuts one way or the other. The third factor will nearly always cut slightly in favor of the opposing party only because there will inevitably be some inconvenience to rescheduling; thus our relevant query is

the degree to which the third factor cuts in favor of the opposing party. The government made no contention its witnesses or its counsel would be particularly inconvenienced by this motion, so we give this factor little weight.

Most relevant is *Diaz*'s fourth factor: whether Brown's counsel actually needed extra time to prepare for trial and whether Brown was prejudiced as a result. When the motion for continuance was made, 26 days still remained until trial and 16 days had already passed for counsel to acquire the necessary transcripts and complete necessary discovery. The defense counsel made no record to help us assess the need for a continuance or harm from its denial. Nowhere in the record did the defense demonstrate or argue significant hardship would arise in accomplishing the necessary tasks in the time allotted without a grant of the continuance. Without more of a record, we have little evidence that the first denial harmed the defendant, that defense counsel was unable to meet the original schedule, or that any harm which might exist because of the fixed trial date was due to anything besides the defense's tardiness. The burden here is on the defendant to show abuse of discretion and, and considering the fourth *Diaz* factor, the burden is not met.

Brown urges us to consider that entry of new counsel on May 17 favors a more lenient stance towards the motion. He cites to *United States v. King*, 664 F.2d 1171 (10th Cir. 1981), where we found the denial of a continuance violated the defendant's Sixth Amendment right to effective assistance of counsel. In the

*King* case, however, new counsel only had 12 days to prepare for trial—not the 42 days available to new counsel. *Id.* at 1172.[1] In 12 days, King's new counsel had to respond to a complicated government tax evasion case three years in the making, with a total of almost 200 witnesses and 5,000 exhibits. By comparison, the case here resembled a routine trial advocacy problem: 1) a two-month government investigation,[2] 2) relatively straight forward facts, and 3) a three-day trial consisting of nine witnesses, and fourteen exhibits.

The district court's denial of Brown's first motion to continue was no abuse of discretion.

*2. Second Request for Continuance*

Defense counsel made a second motion for a continuance four days before trial to secure additional time to contact and arrange for a number of alibi witnesses to travel from Louisiana to Wyoming. At a hearing the morning of trial, defense counsel offered to call them to testify by telephone if the continuance was denied. The government objected to the continuance as well as the telephone testimony, but offered video testimony as an alternative. Defense counsel then responded, "Your Honor, I certainly would prefer video as well and

___

[1] Even the original counsel in the *King* case had less time to prepare than new counsel here with only 27 days passing between King's arraignment and trial. *Id.*

[2] The government investigation relevant to Brown occurred during July and August of 2004. The grand jury indictment issued seven months later in March, 2005.

will try to arrange that and, if not, will address the Court as to whether it can be by video or telephone." Aplt. App. Vol. 1 at 86. After the defense counsel's concession, the court denied the motion to continue and agreed that video conference would be acceptable.

"[W]hen a continuance is sought to obtain witnesses, the accused must show who [][the witnesses] are, what their testimony will be, that the testimony will be competent and relevant, that the witnesses can probably be obtained if the continuance is granted, and that due diligence has been used to obtain their attendance on the day set for trial." *United States v. Johnson*, 977 F.2d 1360, 1366 (10th Cir. 1992) (quoting *United States v. Harris*, 441 F.2d 1333, 1336 (10th Cir. 1971)). Brown again has not met his burden.

In Brown's Notice of Alibi, he listed nine witnesses that he intended to call. While citing the testimony of witnesses as important to the defense, none of the witnesses planned to offer potential alibi evidence for July 19, July 21, or August 13, the dates of the drug transactions charged against Brown. In fact, defense counsel conceded that he was waiting until trial to see if any of the witnesses in the alibi notice were relevant before making an effort to bring them forward. He ultimately sought to bring only two of the witnesses to testify to Brown's attendance at a music festival in Louisiana on July 2–4, eventually moving for a third continuance at trial after he failed to secure their attendance. The proffered testimony was intended to cast doubt on the validity of statements

by two of the investigating officers that Brown had been seen in Cheyenne on July 1, 2004, after he was pulled over for a traffic violation. The witnesses would not, however, directly contradict the officers' statements and would not provide an alibi for the dates during which the three drug deals occurred.

Furthermore, if defense counsel wished to call any of the alibi witnesses and could not secure their transportation to Cheyenne, then the video conference alternative remained. At no point did the defense counsel ask for use of the video conference option or explain that it was unavailable. On appeal, Brown suggests the trial's immediate commencement after denial of his second motion for continuance meant jury selection prevented counsel from making the arrangements for a video appearance. But nowhere in the record is there any indication defense counsel was unable to arrange such a conference. Additionally, defense counsel was certainly aware that trial was commencing the next day when he offered video and telephone as alternatives he would explore.

Accordingly, the denial of the second motion to continue was also well within the district court's discretion.

### 3. Third Request for Continuance

Finally, Brown argues in his reply brief that during trial the district court improperly denied a third request for a continuance. We do not consider arguments raised for the first time in a reply brief. *See Anderson v. United States Dep't of Labor*, 422 F.3d 1155, 1174–75 (10th Cir. 2005) (issues not raised in

opening brief are waived). Even if we did, Brown has not demonstrated under *Diaz* or *Harris* the importance of the witnesses and the harm created by their absence.

*B. Sentencing*

We review legal interpretations of the sentencing guidelines and whether a defendant's sentence violates the Sixth Amendment *de novo*. *United States v. Martinez,* 418 F.3d 1130, 1133 (10th Cir. 2005); *United States v. Dowell*, 430 F.3d 1100, 1109 (10th Cir. 2005). We review any factual findings at sentencing for clear error. *Martinez*, 418 F.3d at 1133.

A jury found Brown guilty of three counts of illegal drug sales involving a total of 14.5 grams of cocaine and cocaine base. At sentencing, the district court allowed in evidence of other alleged drug sales by Brown and determined Brown's sentence should reflect sales of 1,206 grams or over 1.2 kilos of cocaine and cocaine base. The defendant argues, in light of *United States v. Booker*, 543 U.S. 220 (2005), that a question still remains as to what evidentiary burden should be used at sentencing to make findings in addition to those found by a jury at trial. Defendant argues for a standard higher than the preponderance of the evidence used by the district court.

We made clear, however, in *United States v. Magallanez*, 408 F.3d 672, 684–85 (10th Cir. 2005), that a district court is not bound by the findings of the jury at sentencing. Rather, sentencing facts are based on the evidence and

testimony presented at sentencing under a preponderance of the evidence standard. As a result, Brown's argument fails and the district court's findings regarding drug quantities are tested for clear error.[3] There is no clear error here.

### III. Conclusion

For the foregoing reasons, we find no merit in defendant's contentions the district court abused its discretion by denying his multiple continuance motions. In light of our holding in *Magallanez*, we also deny his claim of sentencing error. The district court is AFFIRMED on all counts.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

---

[3] In his reply brief, defendant appears to concede the argument and raises a new issue. He suggests the preponderance of the evidence standard did not support the sentencing judge's finding that he possessed a firearm in connection with his drug dealing activity. Thus, the sentencing judge should not have added a two-level increase under the sentencing guidelines. This issue is waived as it was not raised in the opening brief. *See Anderson*, 422 F.3d at 1174–75 (discussing the reason for this rule). But even if we were inclined to ignore the waiver, the high standard of clear error review would not allow us to overturn the judge's ruling that the .45 caliber clip and bullets carried by Brown were in connection with drug dealing and supported the firearm enhancement.