United States Court of Appeals

For the Eighth Circuit

_____

No. 14-3011

_____

United States of America

*Plaintiff - Appellee*

v.

Darryl House

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

_____

Submitted: April 14, 2016
Filed: June 6, 2016

_____

Before RILEY, Chief Judge, WOLLMAN and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Darryl House displayed a handgun while robbing the Jayson Jewelers store and was found guilty of violating the Hobbs Act and brandishing a weapon during a crime

of violence.  The district court[1] sentenced House to life imprisonment.  He appeals his sentence and several of the district court's rulings.  We affirm.

## I.

On September 23, 2009 Darryl House and his associates robbed Jayson Jewelers in Cape Girardeau, Missouri.  Kevin Stitt and Keyessence Fountain entered the store pretending to be a couple interested in wedding rings and started speaking with the clerk Debbie Drerup.  House then entered the store and pointed a handgun at Drerup.  Stitt placed handcuffs on Drerup, wrapped duct tape over the handcuffs and Drerup's eyes, and left her in the back room with the door closed.  While Drerup was restrained, House, Stitt, and Fountain took jewelry produced outside Missouri and cash from the store before fleeing.  After House and his associates had fled the scene, the police arrived and took DNA samples from the handcuffs.

About three years later Stitt was arrested in Tennessee.  The Missouri highway patrol crime laboratory notified the Cape Girardeau police department that his DNA sample matched one taken from Jayson Jewelers on the day of the robbery.  Stitt subsequently admitted that he had robbed the store in 2009 and identified House as his associate who had carried the handgun during the robbery.

House was charged with interfering with interstate commerce by aiding and abetting a robbery of a business, in violation of the Hobbs Act, 18 U.S.C. § 1951, and with brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c).  During jury selection the government used one of its peremptory strikes on juror 18, the only black member of the jury panel.  House objected to the strike and raised a <u>Batson</u> challenge, <u>see</u> <u>Batson v. Kentucky</u>, 476 U.S. 79, 84 (1986), but the district court accepted the prosecution's justification for striking the juror.  During the

---

[1] The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

trial the parties stipulated to the interstate nexus element of the Hobbs Act charge. Several witnesses testified for the prosecution, including Stitt and the clerk Drerup who identified House as the person who pointed the handgun at her during the robbery. The jury convicted House on both counts.

The presentence investigation report indicated that House was subject to a mandatory life sentence for his Hobbs Act violation since he had at least two prior felony convictions for crimes of violence — a 2001 conviction for aggravated robbery in Tennessee and a 2006 conviction for aggravated robbery in Illinois. According to the report, House's guideline range for possessing a firearm during the robbery was seven years to life. The district court overruled his objections to the report and sentenced him to life imprisonment for his Hobbs Act violation and a consecutive seven years for brandishing a firearm. House appeals his sentence and several of the court's rulings.

II.

We review Batson rulings for clear error, according great deference to the district court's findings, and "keeping in mind that the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from the party opposing the strike." United States v. Maxwell, 473 F.3d 868, 871 (8th Cir. 2007) (internal quotation marks omitted). "If a party makes a prima facie showing that a peremptory challenge is race based, the proponent must show a race neutral justification to overcome the objection." United States v. Ellison, 616 F.3d 829, 832 (8th Cir. 2010). The district court then determines whether the objecting party has shown purposeful discrimination. Id.

The district court did not clearly err by overruling House's Batson challenge. The government claimed that its race neutral justifications for striking juror 18, the sole potential black juror, were that he had refused to make eye contact with the

attorneys or the judge, had slouched in his chair and appeared disinterested in the trial, and had been the only prospective juror not to list an occupation or work history on the juror information sheet. "[D]emeanor and body language" may serve as legitimate, race neutral reasons to strike a potential juror. Maxwell, 473 F.3d at 872. A venire member's "nearly empty questionnaire" may also be a valid, race neutral reason to strike that person. See United States v. Carter, 481 F.3d 601, 610 (8th Cir. 2007), rev'd on other grounds, 554 U.S. 237 (2008). Even though the district judge had not personally detected disinterest by the prospective juror, he was permitted to credit the government's observations in overruling defendant's Batson challenge. See Ellison, 616 F.3d at 832.

III.

House claims that the Hobbs Act is unconstitutional on its face because Congress exceeded the legislative power granted it under the Commerce Clause when it passed this statute. We review constitutional challenges de novo. United States v. Foster, 443 F.3d 978, 981 (8th Cir. 2006). House argues that the Commerce Clause and the Tenth Amendment prohibit the federal government from making robbery of a local store a federal crime, but the Hobbs Act contains an express nexus requiring the charged criminal conduct to affect interstate commerce. See, e.g., United States v. Vong, 171 F.3d 648, 654 (8th Cir. 1999). Congress has the constitutional authority to pass such legislation, and House's constitutional challenge to the Hobbs Act thus fails.

House also argues that his robbery of Jayson Jewelers was not unlawful under the Hobbs Act because it did not obstruct, delay, or affect interstate commerce. See 18 U.S.C. § 1951. The federal jurisdictional requirement in the Hobbs Act is satisfied however when a robbery depletes the assets of a business engaged in interstate commerce. See United States v. Farmer, 73 F.3d 836, 843 (8th Cir. 1996). The robbery here satisfies this requirement because the stolen jewelry had been made

outside of Missouri and shipped to a store in Missouri where it was offered for sale. See Vong, 171 F.3d at 654. House's robbery of Jayson Jewelers thus met the Hobbs Act jurisdictional requirement.

IV.

House argues that the district court erred by imposing a mandatory life sentence under 18 U.S.C. § 3559(c). Section 3559 mandates a life sentence for a defendant who commits a serious violent felony and already has at least two such convictions. We review statutory construction and constitutional challenges de novo and factual findings for clear error. See Foster, 443 F.3d at 981; United States v. Brummels, 15 F.3d 769, 771 (8th Cir. 1994).

House argues that a Hobbs Act robbery does not qualify as a "serious violent felony" under 18 U.S.C. § 3559(c) so his life sentence for his crime was improper. "[S]erious violent felony" is defined in § 3559(c) as an "offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 3559(c)(2)(F)(ii). Robbery is defined in the Hobbs Act as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property." 18 U.S.C. § 1951(b)(1). The district court thus did not err by ruling that House's robbery conviction was a "serious violent felony" under 18 U.S.C. § 3559(c)(2)(F)(ii). Farmer, 73 F.3d at 842.

House also claims that his life sentence is unlawful under 18 U.S.C. § 924(c)(3)(A), which provides penalties for "crime[s] of violence" or felonies that have "as an element the use, attempted use, or threatened use of physical force against the person or property of another." He contends that Hobbs Act robbery is not a crime of violence under this statutory definition. The district court sentenced House to life

-5-

imprisonment under § 3559(c), however, not § 924(c). Furthermore, even if we analyzed the lawfulness of his sentence under § 924(c), we would be bound by Farmer, 73 F.3d at 842, where we concluded that Hobbs Act robbery has "as an element the use, attempted use, or threatened use of physical force against the person of another."

According to House, his 2006 Illinois conviction for aggravated robbery does not qualify as a prior serious violent felony. Robbery is however one of the enumerated serious violent felonies provided in § 3559(c)(2)(F)(i). Under § 3559(c), an offense qualifies as robbery if it contains the elements of generic robbery which is defined as aggravated larceny, or the misappropriation of property under circumstances involving immediate danger to a person. See United States v. Becerril–Lopez, 541 F.3d 881, 891 (9th Cir. 2008); 3 W. LaFave, Substantive Criminal Law § 20.3(e) (2d ed. 2003). The definition of aggravated robbery in the Illinois statute under which House was convicted was the unlawful taking of personal property from a person or in the presence of another by force or threat of force while "indicating verbally or by [] action" that he is armed with a dangerous weapon. 720 Ill. Comp. Stat. 5/18-5 (2006). We conclude that House's 2006 state conviction satisfies the generic definition of robbery and therefore qualifies as a prior serious violent felony. See Farmer, 73 F.3d at 842.

Another reason House argues his Illinois robbery conviction does not qualify as a serious violent felony is because he claims he did not use a dangerous weapon when he committed that crime. According to § 3559(c)(3)(A), robbery cannot be a predicate offense if clear and convincing evidence shows that it did not result in death or serious bodily injury and "no firearm or other dangerous weapon was used" or threatened to be used. 18 U.S.C. § 3559(c)(3)(A). Here, House and his uncle submitted affidavits stating that the conduct underlying his aggravated robbery conviction did not involve the use or threatened use of a dangerous weapon. To have been convicted of the Illinois offense of aggravated robbery, however, House had to

have indicated to the victim that he was "armed with a firearm or other dangerous weapon." See 720 Ill. Comp. Stat. 5/18-5 (2006). The district court therefore did not err by determining that his Illinois robbery conviction qualified as a prior serious violent felony.

House also challenges the constitutionality of § 3559(c) because he claims it places the burden on him to show that his prior conviction does not qualify as a predicate offense. The burden shifting provision in § 3559(c)(3)(A) is not unconstitutional, however, because "Congress has the power to place on a defendant the burden of establishing an affirmative defense that is not an essential element of the crime." United States v. Davis, 260 F.3d 965, 970 (8th Cir. 2001).

Appellant also claims that his Tennessee conviction in 2001 for aggravated robbery does not qualify as a second requisite predicate offense because this conviction was unconstitutional as he cannot recall meeting with an attorney before his hearing on the state's motion to transfer him from juvenile to adult criminal court. His argument fails because "[t]he Constitution only requires federal [sentencing] courts to permit a collateral attack on an earlier state conviction . . . [if] the defendant asserts the state court violated [his] right to appointed counsel." United States v. Jones, 28 F.3d 69, 70 (8th Cir. 1994). To establish this claim a defendant must allege a "complete lack of representation by counsel during earlier state proceedings." Id. Because House's argument is an ineffective assistance of counsel claim, his 2001 Tennessee conviction cannot be collaterally attacked here. See United States v. Walker, 202 F.3d 1066, 1067 (8th Cir. 2000). Since House had at least two prior violent felony convictions, the district court properly sentenced him to life imprisonment under § 3559.

House argues in addition that Alleyne v. United States, 133 S. Ct. 2151 (2013), and the Sixth Amendment require that a jury rather than a judge make any finding that he had been previously convicted of at least two serious violent felonies since such a

fact could increase the maximum penalty to which he was exposed. In Almendarez–Torres v. United States, 523 U.S. 224, 226–27 (1998), the Supreme Court explained however that recidivism is not an element of an offense that must be submitted to a jury, and the Alleyne Court, 133 S. Ct. at 2160 n.1, did not revisit that conclusion. United States v. Roberts, 763 F.3d 947, 949 (8th Cir. 2014). We conclude that the district court properly sentenced House to life imprisonment under 18 U.S.C. § 3559(c).

V.

House also appeals some evidentiary rulings. He argues that the district court violated his constitutional rights by denying his motion to suppress Stitt's trial testimony. When reviewing the denial of a motion to suppress, we review factual findings for clear error and legal conclusions de novo. United States v. Smith, 720 F.3d 1017, 1019 (8th Cir. 2013). After trial, "we examine the entire record, not merely the evidence adduced at the suppression hearing." United States v. Henderson, 613 F.3d 1177, 1181 (8th Cir. 2010) (internal quotation marks omitted). House contends that Stitt's trial testimony should have been suppressed because it was a result of his involuntary confession.

Although House does not have standing to vindicate Stitt's right against self-incrimination, he has standing to raise a Fifth Amendment claim to protect his own right to a fair trial. See United States v. Dowell, 430 F.3d 1100, 1107 (10th Cir. 2005); United States v. Gonzales, 164 F.3d 1285, 1289 (10th Cir. 1999). Where a defendant seeks to exclude witness testimony because it is a result of a coerced confession, he has the burden to prove that the earlier confession was coerced and led to false trial testimony. See Dowell, 430 F.3d 1107. Here, House's Fifth Amendment challenge fails because he did not show a "serious factual dispute" about whether Stitt was coerced to confess or whether Stitt's confession actually affected the reliability of his trial testimony. See id. at 1108. Moreover, about two years had passed between

Stitt's interrogation and his trial testimony, and "[w]ith this passage of time . . . [the alleged] coercive atmosphere of the interrogation had certainly dissipated." See Williams v. Woodford, 384 F.3d 567, 595 (9th Cir. 2002). The district court thus did not err in denying House's motion to suppress Stitt's trial testimony.

We review House's remaining evidentiary arguments for plain error because he did not raise them below. United States v. Peneaux, 432 F.3d 882, 891 (8th Cir. 2005). House claims that the clerk Debbie Drerup was only able to identify him at trial because a police detective had told her that House was "the guy" who robbed the store and she had seen House in his prison uniform during earlier proceedings. House argues these incidents were "impermissibly suggestive," and under the totality of the circumstances they created "a very substantial likelihood of irreparable misidentification." Manson v. Brathwaite, 432 U.S. 98, 107, 116 (1977) (internal quotation marks omitted); see Graham v. Solem, 728 F.2d 1533, 1541–42 (8th Cir. 1984) (en banc).

Even assuming that it was "impermissibly suggestive" for Drerup to have seen House in his prison clothes during the state court proceedings and for the detective to refer to House as "the guy" who committed the robbery, this did not create "a very substantial likelihood of irreparable misidentification" under the totality of circumstances. See Manson, 432 U.S. at 113. Drerup testified that she had a clear enough view of House during the robbery to describe his physical characteristics accurately, and the district court did not plainly err by permitting her to identify him in court. Moreover, any potential error was harmless because Stitt corroborated Drerup's testimony by also testifying about House's role in the robbery. See Williams v. Armontrout, 877 F.2d 1376, 1381 (8th Cir. 1989).

House finally argues that the district court erred by admitting a motel receipt with his name and driver license identification number on it because there was insufficient authenticating evidence. The receipt was used by the government to

demonstrate that House stayed at a hotel near Jayson Jewelers the night before its robbery. We conclude that the receipt was sufficiently authenticated because the motel record custodian, Melinda Schaffer, testified that she had obtained the receipt from the company's records. See Fed. R. Evid. 901(b)(1). House claims that the court erred by permitting Schaffer to authenticate the motel receipt because she was not present when the document was created, but the document would also have been admissible under Rule 803(6) as a record of regularly conducted activity. See United States v. Wigerman, 549 F.2d 1192, 1194 (8th Cir. 1977) (per curiam); United States v. Franks, 939 F.2d 600, 602 (8th Cir. 1991). The district court did not plainly err by permitting Schaffer to testify and admitting the motel receipt into evidence.

VI.

For these reasons the judgment of the district court is affirmed.[2]

_____

_____

[2] The government's motion to supplement the record is denied as moot.